[No. 15938.   Department One.   January 26, 1921.]

THE STATE OF WASHINGTON, *Respondent,* v.
J. S. BURK, *Appellant.*[1]

GAME—CRIMINAL PROSECUTION—VIOLATION OF GAME LAWS—JUSTIFICATION—PROTECTION OF PROPERTY. In a prosecution for violation of the game law making it a criminal offense to kill elk, it is a complete defense to show that the killing was reasonably necessary to prevent the destruction of the accused's property.

SAME—EVIDENCE OF JUSTIFICATION—SUFFICIENCY. In a prosecution for unlawfully killing elk, in violation of the game law, a reasonable necessity for the killing is shown by evidence to the effect that a band of elk were in the habit of trespassing upon accused's property, destroying crops, doing material damage, and on one occasion had killed a valuable calf, that they had been repeatedly driven off but returned and were running through and trampling crops at the time two of them were shot by accused.

SAME—EVIDENCE—ADMISSIBILITY. In a prosecution for killing elk in violation of the game laws, upon an issue as to the necessity

[1]Reported in 195 Pac. 16.

of the killing in defense of property, accused may show recent past injury by the elk in question, and the extent of the damage done or threatened.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered February 24, 1920, upon a trial and conviction of violation of the game laws. Reversed.

*William B. Clark,* for appellant.

*O. R. Schumann* and *J. Lenox Ward,* for respondent.

BRIDGES, J.—The defendant was charged, by a criminal complaint lodged in the justice of the peace court of Yakima county, with unlawfully killing and having in his possession and under his control an elk, including the hide, horns and hoofs. At the same time, another criminal complaint was filed against the defendant in the same court wherein an identical charge was made concerning another elk. The two cases have been consolidated for the purposes of trial and appeal. It was claimed by the state that the defendant had violated Rem. Code, § 5395-33, which, in substance, provides that no person shall hunt, catch, take, kill or have in his possession any elk or part thereof. The defendant was convicted. He appealed to the superior court, where he was again convicted. A new trial was granted him, however, in that court, and in another trial he was again convicted, and has now appealed to this court. He has at all times admitted that he killed the two elk and had their dead bodies in his possession, until the same were surrendered by him to the county game officer. As a defense to such killing, he sought to justify himself on the ground that the elk were, at the time of the killing, in the act of damaging and destroying his crops.

As we understand it from the argument, the state has raised two chief questions in support of the judg-

ment of conviction. They are, first, that the appellant will not be heard, under any circumstances, to justify his violation of the statute on the ground that the elk were damaging his property; and second, that, if it be conceded that in a case of this character the defendant may so justify his act, then his testimony in this case was insufficient to show any justification, and was properly taken by the court from the jury. The court heard appellant's justification testimony, but held that it was wholly insufficient and did not tend to justify his act, and it refused to submit it to the jury. The result was that the only testimony before the jury was that the elk had been killed by the appellant, and, of course, the jury could do nothing but return a verdict against him. We shall discuss the respondent's two propositions in the order mentioned.

The argument of the state is to the effect that one may not justify himself in the killing of an elk, in violation of express provisions of the statute, simply because the elk, at the time of the killing, may be damaging or even threatening to destroy the property of the person charged with the killing. It is argued that, when the legislature enacted this statute for the protection of elk, it must have realized that they might trespass upon the lands of private individuals and do material damage to crops or domestic animals, but determined that the preservation of the elk was of such importance to the people of the state as that the private individual should bear his loss for the good of the public. This argument is more plausible than sound. The state places its reliance largely upon the case of *Barrett v. State,* 220 N. Y. 423, 116 N. E. 99, Ann. Cas. 1917D 807, decided in 1917. The legislature of the state of New York had passed and put into force a comprehensive law with reference to the protection and increase of the beaver. It was made a criminal

offense to kill, destroy, or in any manner interfere with this animal. The statute authorized the state officers to obtain, by purchase or otherwise, beaver, and to place them in favorable locations within the state. Acting by virtue of this law, the state authorities turned loose four beaver upon Eagle creek, in the state of New York. These four beaver and their increase remained in this locality. Close by, Mr. Barrett owned a small tract of land, chiefly valuable for building sites, and it was so made valuable because of the great number and character of the trees growing thereon. From time to time, these beaver, following their instincts, had either cut down or girdled and killed a large number of these valuable trees, and threatened to destroy all the rest. Mr. Barrett began suit against the state to recover his damages. In the lower court he recovered. The appellate division of the court affirmed the award to him. The court of appeals, however, in the case cited, reversed the lower court and held that the plaintiff could not recover. The court held that the state had a constitutional right to pass laws for the protection and preservation of the beaver and other wild animals, and further said:

"Wherever protection is accorded harm may be done to the individual. Deer or moose may browse on his crops; mink or skunks kill his chickens; robins eat his cherries. In certain cases the legislature may be mistaken in its belief that more good than harm is occasioned. But this is clearly a matter which is confided to its discretion. It exercises a governmental function for the benefit of the public at large and no one can complain of the incidental injuries that may result."

That, however, was a civil case and it was properly decided that, in no event, could the state be held liable to private individuals for damage done by animals protected by state law. While some things announced

in the opinion might, at first glance, appear to be applicable to this case, yet we must assume that the court used its language as applicable to a civil action and not to a criminal case such as this.

If, in this case, the appellant had undertaken to defend on the ground that he killed the elk for the protection of his life, or that of some member of his family, then, unquestionably, such defense would have been available. But the constitutional right is to defend not only one's life but one's property. The difference in the justification in killing a protected elk in defense of one's life and killing one in defense of one's property is only in degree. Undoubtedly, a stronger showing would have to be made by one undertaking to justify his violation of the law in defense of his property than he would be required to make in defense of his life.

The case of *State v. Ward*, 170 Iowa 185, 152 N. W. 501, Ann. Cas. 1917B 978, appears to be directly in point. In that state there was a statute that made it unlawful for any person to kill any deer, elk or goat. The defendant was a farmer, and in his neighborhood was a band of deer which, for a long time past, had been in the habit of appearing upon his premises and eating up and trampling down much of his grain. On many occasions he had driven them away, but after they had done much damage, on one occasion, he shot and killed one of them. He was arrested and charged with violating the statute and convicted in the lower court, but upon appeal to the supreme court of the state of Iowa the judgment was reversed. The court put the question before it as follows:

"The one question in the case is whether a person who kills a deer, elk, or goat is necessarily guilty of violating the statute regardless of the reasons for such killing. To put it in another way: Is it open to the

defendant to justify an admitted killing by showing a reasonable necessity in defense of person or property?"

The court, among other things, then says:

"By way of analogy, we may note that the plea of reasonable self-defense may always be interposed in justification of the killing of a human being. We see no fair reason for holding that the same plea may not be interposed in justification of the killing of a goat or a deer. The right of defense of person and property is a constitutional right . . . and is recognized in the construction of all statutes. If in this case it was reasonably necessary for the defendant to kill the deer in question in order to prevent substantial injury to his property, such fact, we have no doubt, would afford justification for the killing."

This whole question is elaborately and learnedly discussed in the case of *Aldrich v. Wright*, 53 N. H. 398, 16 Am. Rep. 339. In that state there was a law for the protection of, and against the killing of, mink. Wright had some geese which these mink were in the habit of chasing and threatening to kill. On one occasion, when the mink were in the act of chasing the geese, Wright, for the purpose of protecting the latter, shot and killed the mink. He was criminally charged with violation of the statute. After an elaborate discussion of the principles involved, the court concludes that the defendant had a right to justify his act, and that his testimony showed he was justified in the killing.

The purpose of these laws is the protection of the game from destruction. The act must be reasonably construed to accomplish the purpose in view. It was not intended that one may not, in defense of his person, kill an elk or other protected animal, nor was it the intention to make it unlawful, under all circumstances, for one to protect his property against the acts of such animals by killing them. Viewing the statute in this

light, it may be justly said that one who kills an elk in defense of himself or his property, if such killing was reasonably necessary for such purpose, is not guilty of violating the law. If such statutes be given the construction contended for by the state, they would probably be unconstitutional, as violating statutory and constitutional provisions authorizing one to protect himself and his property.

We, therefore, hold that the appellant in this case had a constitutional right to show, if he could, that it was reasonably necessary for him to kill these elk for the protection of his property. The views of the trial court were unquestionably in accord with those expressed by us; but he held that the testimony by which the appellant sought to justify his act was insufficient as a matter of law for that purpose. In other words, he held that the testimony failed to show any justification.

It is, therefore, necessary for us to see what testimony the appellant offered tending to show his justification and which the court refused to submit to the jury. After the state had put in its testimony, and after the appellant had admitted the killing of the elk and was seeking to show justification, the trial court excused the jury and required him to proceed with his proposed testimony in order that the court might determine whether it was sufficient to submit to the jury. The testimony offered by him tended to show the following: that he owned a tract of land which was grown to corn, potatoes, meadow and other crops; that a band of eight elk had recently been in the habit of coming upon his premises and causing damage; that a short while before he shot any of the elk, he had on one night three times driven them from his premises; that on one occasion they had killed a valuable calf, and on another severely injured another calf; that the

elk were in the habit of running through his cornfield
and knocking down the corn and greatly damaging
it; that, about the time in question here—at seven
o'clock in the morning—he discovered this band of elk
running through his cornfield and potato patch, knock-
ing down and trampling upon his crops, and that while
they were so doing, he shot a male and female elk. He
identified these two animals as being two of the herd
of elk which had theretofore been on his place.

The court concluded that this testimony would not
show justification for the killing of the elk. In our
judgment, the decision of the court was wrong. It
seemed also to have been of the opinion that no testi-
mony could be introduced except that which tended
to show the damage done or threatened to be imme-
diately done by the particular elk which were killed,
and that that testimony should be limited to the dam-
age being done at the time of the killing. If the court
intended to so rule, we think he was in error for the
reasons we will later give.

It might, with some reason, be argued that, under no
circumstances, is the question of the sufficiency of the
testimony to show justification a matter of law for the
court to decide. In any event, generally speaking, it is a
question of fact for the jury. In this case, we have no
doubt there was plenty of testimony on the question of
justification to carry the case to the jury. The appellant
should also be permitted to introduce testimony showing
the recent past injury done by this band of elk, not for
the purpose of justifying the appellant in killing them
because of such past damage, but for the purpose of
showing their destructive capability, and what the ap-
pellant might have expected the elk would do at the
time he killed them, judging by past experience; that
is to say, in determining whether or not it was reason-
ably necessary for him to kill the elk, the appellant

might take into consideration his knowledge of damage done to him by the elk on other recent occasions, as tending to indicate the damage they might do on this occasion, if not interfered with. The trial court was quite right in his ruling that one may not kill a protected animal which at the time is trespassing upon his land as a punishment for any past injury which that animal had done. But that principle of law would not make it proper to exclude all evidence of recent prior injury done by such elk on similar occasions.

So, also, appellant should be permitted to show the damage being done or threatened to be done, at the time of the killing, by the whole band of elk, provided he identified the two elk in question as being a part of that band; this, not for the purpose of justifying him in killing these two elk on account of any damage being done by the other members of the band, but because those killed, together with their mates, were doing or threatening to do the damage. The necessities of the situation require this, because it might, and probably would, be quite impossible for appellant to point out the particular damage being done by the two elk which were killed.

We revert to the sufficiency of the testimony to show justification. The reasonable necessity rule is the one which must control in a case of this character. Doubtless, circumstances might arise where the court might be justified in holding, as a matter of law, that the testimony failed to show such reasonable necessity, such as killing of elk solely because of past damage done by them; or because of a simple trespass without any material damage done or reasonably threatened. But here, according to the testimony offered, these same elk had recently several times been trespassing and had done actual and material damage; several times appellant had driven them from his premises;

at the time he shot, they were in his corn, eating it and knocking it down, and trampling on his other crops. It cannot be said that this testimony was, as a matter of law, insufficient. It was for the jury to determine its sufficiency. Generally, all questions of fact are for the jury. It is only in exceptional instances where they are for the court. While we have not seen many cases of the kind here involved, the following authorities will throw light on the subject: It is said in 2 Cyc. 415:

"One may kill a vicious animal in the necessary defense of himself or the members of his household, or under circumstances which indicate danger that property will be injured or destroyed unless the aggressor is killed, but it seems that such killing is justified only when the animal is actually doing injury. . . . Every person has a natural right to defend and protect his animate property—as cattle, stock, and fowls—from injury or destruction by dogs, and in pursuance of that object may kill dogs engaged in doing injury to such animals owned by him; but there must exist an apparent necessity for such a course, and the destruction of the dog must be reasonably necessary under the circumstances. . . . The right to kill dogs, in order to protect inanimate property, is based upon the same considerations."

It has also been held that reasonable grounds to fear injury to property is a good defense to a prosecution for cruelty to animals. *Hunt v. State,* 3 Ind. App. 383, 29 N. E. 933; 3 C. J. 70. In 3 C. J. 163, the following rule is laid down:

"Where facts amounting to a justification are shown it is error to take the consideration of such facts from the jury. As a general rule it is for the jury to determine, in an action for damages for killing a dog, whether the dog was of such vicious nature or evil habit as placed it within the right of any man to kill it; or whether under all the circumstances the danger to defendant's property was of such a char-

acter as to justify the killing of the dog to avoid it. Likewise it is generally within the province of the jury to determine the question of the reasonableness of defendant's apprehension of injury, and of the means of defense employed to prevent it, and whether or not the means employed were the proximate cause of the animal's death.''

In the case of *State v. Barr,* 11 Wash. 481, 39 Pac. 1080, 48 Am. St. 890, 29 L. R. A. 154, this court said:

''It is a universal principle that neither in defense of person nor property can one go further than is reasonably necessary for that purpose, and this single principle followed to a logical conclusion will establish the proposition that whether or not that was done in a particular case was justified under the law must be a question of fact, or mixed law and fact, and not a pure question of law.''

We cite the following cases as lending weight to these propositions: *Harrington v. Hall,* 6 Penne. (Del.) 72, 63 Atl. 875, where it was held that where defendant shot plaintiff's dog while the latter was on his premises, killing his turkeys, his act was justified; *Thompson v. State,* 67 Ala. 106, 42 Am. Rep. 101, where it was held that:

''The general principle is not denied that a person may lawfully kill an animal when necessary for the preservation of his property, as when one shoots a dog accustomed to injure sheep, and found at the time in the act of killing one.''

Also, *Hubbard v. Preston,* 90 Mich. 221, 51 N. W. 209, 30 Am. St. 426, 15 L. R. A. 249, where it was held that shooting into some dogs, gathered on one's premises at night, barking, quarrelling and fighting, so as to keep the family awake, seriously annoying them until it has become an intolerable nuisance, is justified if it is a reasonable and necessary means to protect the family from such nuisance. See,

also, extensive note to that case, 15 L. R. A. 249. See, also, *Canefox v. Crenshaw,* 24 Mo. 199, 69 Am. Dec. 427; *State v. Ward, supra.*

We think the appellant was entitled to have the jury consider the sufficiency of his justification testimony. The judgment is reversed and the cause remanded for new trial.

PARKER, C. J., HOLCOMB, MACKINTOSH, and FULLERTON, JJ., concur.