## STATE v BRINKMAN

Common Pleas Court, Hancock Co

No 26581.  Decided Jan 31, 1941

Thomas J. Herbert, attorney general, and Maurice L. Schellinger, assistant attorney general, Columbus, for appellee.

Roy Lambert, Findlay, for appellant.

## OPINION

By PENDLETON, J.

This is a criminal case which originated in the court of a Justice of the Peace, with the filing of two separate affidavits, each charging the unlawful killing of a pheasant out of season. The charge was based upon the provisions of §1408 GC. By agreement both complaints were considered upon the same evidence which was reduced to writing in the bill of exceptions filed in this court. The appellant-in-error. the defendant below, is seeking a reversal of the conviction in the lower court upon a number of grounds, only a part of which are considered in this opinion.

By stipulation of the parties in this court, also, the two complaints have been treated as one, with a single docket numbering for the combined cases. As a more effective means of securing an adjudication of the questions in issue, also, it has been stipulated by the parties that the controversy be submitted to this court upon the pleadings, the bill of exceptions, arguments and briefs for final determination, upon questions both of law and fact.

As disclosed by the evidence in the bill of exceptions the defendant on October 28, 1940 was upon his own farm, and engaged in combining his crop of soy beans. Defendant was riding on the combine and had an employe driving the attached tractor. At two different times defendant stopped his work, picked up his gun, and shot, killing first a cock pheasant and then a hen. At the time of the shooting these birds had flown out of the bean field, and thirty or forty feet into defendant's adjoining pasture. Defendant did not take the birds into his possession, or pick them up. The prosecuting witness, the game warden, picked them up and brought them into court as exhibits.

The testimony further discloses that the defendant, at the time of the shooting and the arrest, complained to the game warden that the pheasants were eating his soy beans. Upon the trial in the lower court the defendant, by way of justification for the shooting, tried to show that the pheasants had materially damaged him but the court sustained the state's objection to the testimony, and ordered it stricken from the record.

It is the contention of the state that such testimony with regard to damage was irrelevant, could not be considered as defensive, and was properly excluded. To the rulings made in accordance with this view of the law the defendant has excepted.

The law with regard to wild game is well settled, and the title to wild game within the boundaries of Ohio is in the people in their sovereign capacity; that is, in the state. **State v Hanlon, 77 Oh St 19; Fitton v State, 1 N. P. (N.S.) 133; 19 O. Jur. p. 830, §2.**

"The state, in the exercise of its police power, has authority to make regulations to conserve the game within its jurisdiction. Such limitations deprive no person of his property because he who takes or kills game had no previous right of property in it, and when he acquires such right by reducing it to possession he does so subject to such conditions and limitations as the Legislature has seen fit to impose. The Legislature has a very large discretion in such cases as to the means to be adopted for the protection of game, and if these means do not violate any constitutional provision, the courts will never set up their judgment against that Legislature as to whether they are the best or most equitable means that might have been adopted." **19 O. Jur. p. 835** (quoting numerous authorities).

In the instant case, however, there is an additional principle at issue, which is stated as follows:

"In general, a statute forbidding the killing of game under penalty does not apply to a killing which is necessary for the defense of person or property. To justify such a killing, it must be reasonably necessary for the protection of

a person or property." 24 Am. Jur. p. 383, §12, citing State v Ward, 170 Ia. 185, 152 N. W. 501; Aldrich v Wright, 53 N. H. 398, 16 Am. Rep. 339; State v Burk, 114 Wash. 370, 195 Pac. 16; 21 A. L. R. 193 (see annotation at page 199).

To the same effect is the case of State v Rathbone, decided by the Supreme Court of Montana on March 5, 1940, and reported in 100 Pacific Reports, second series, page 86. The third syllabus of this well considered case is as follows:

"If statute making it unlawful to kill elk out of season is so construed as to prevent the killing of elk out of season when reasonably necessary in defense of property, statute is unconstitutional, since it denies to a person the constitutional right guaranteed to him to protect his property by force if necessary."

In Ohio and to the same effect it has been decided in the case of **Myers v State, 29 N. P. (N. S.) 330,** as follows:

"The right of an individual under the constitution to acquire, possess and protect property is superior to the statute making it unlawful to kill certain birds, and where a person kills a barn owl in good faith believing that such owl was preying upon his chickens, he should be acquitted of a violation of the statute."

Quoting from the opinion of this case, on page 332:

"Here is a conflict between the right of private property and protection of this bird among others.

"Under the Constitution of Ohio, among the inalienable rights specified is that of 'acquiring, possessing and protecting property * * *.' (Art. 1, §1).

Also (Art. 1, §19): 'Private property shall ever be held inviolate, but subservient to the public welfare.' With these Constitutional rights, may the Legislature arbitrarily forbid the killing of a bird which it is shown to be destroying the property of a person?

"Which is more important, that the birds shall be protected, or that private property shall be protected? Must the owner of poultry stand by and see predatory birds kill or carry away his property and be helpless to protect the property?"

In this same connection the case of **Walter v State,** decided in the Cuyahoga County Circuit Court in 1905, and reported in **16 O. C. C. (N.S.) 523** needs comment. The syllabi in this case are as follows:

"1. One is guilty of violating ¶4 of §15 of the game law **(97 O. L. 463, 470),** where he has implements for hunting or shooting in the open air on Sunday, even though he is on his own land and seeking birds or animals which have been injuring his crops.
"2. Such game law is not unconstitutional as depriving one of the right to bear arms and protect property, but is a valid exercise of the police power."

This case turned upon the application of a law which provided:

"No person shall hunt or shoot, or have in the open air for such purpose, any implements for hunting, or shooting on any Sunday."

In considering this section the court, at page 524, says:

"The accused claims, secondly, that these provisions should not be so construed as to prohibit hunting unprotected birds or animals that are damaging crops on one's own land on Sunday. We think, however, that the General Assembly plainly so intended. For it has in sections twelve and sixteen expressly permitted the killing of certain protected game by any one who

finds it damage feasant on his own premises, at any time, 'except on Sunday'. In the face of such manifest intention we can not read into the statute a contrary intent."

The same principle is recognized by the Court of Appeals of Perry County in the case of **State v Mohler, 44 Oh Ap 52** in which the court holds:

"Injury to property by wild animals must be of considerable extent to warrant killing animals out of season."

In its opinion at page 55 the court says:

"It was not the absurd intention of the Legislature that an owner or tenant might shoot a particular rabbit when it was actually caught in a deliberate act of cutting fruit trees, but it was intended that an owner or tenant might protect his property from destruction by wild animals when there was a real and existing injury being then done to his property. The injury and damage must be of considerable extent, not just fanciful or trivial. It is not denied in this case that actual and substantial damage was being done to the trees in the Mohler orchards."

There is ample evidence in the bill of exceptions in this case from which the court can, and now, under the stipulations of the parties, does find that the damage of which appellant complained was a real and existing injury to his property, was of considerable extent, and not just fanciful or trivial.

This is a case in which the activities of the division of conservation of the State of Ohio have come in conflict with the fundamental and inalienable right that every land or property owner has to defend his property. To the extent that this right has been abrogated the statute in question is unconstitutional.

For the reasons above given, and upon the authorities above quoted the judgment of the lower court is reversed and final judgment rendered in favor of the appellant. Appellee will pay the costs.