## Commonwealth et al. v. Masden.

Nov. 23, 1943.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellants.

Sam L. Cheatham and Thad Cheatham for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The Isaac W. Bernheim Foundation, a Kentucky corporation, owns approximately 13,000 acres of land in Nelson and Bullitt counties. One of the purposes of the corporation, as set forth in its charter, is "to provide a sacred sanctuary for the non-destructive wild birds and wild life, in order that their extinction may be prevented." On September 4, 1930, the Kentucky Game and Fish Commission entered into a contract with the Bernheim Foundation by the terms of which it agreed to stock the land owned by the Foundation with deer, wild turkeys and other species of game birds and animals which might properly be placed in a game reserve. The Commonwealth agreed to furnish seed and to pay for the labor necessary to plant sufficient feed areas for the

game and birds on the reserve for a period of five years from the time of the execution of the contract, which was to extend over a period of twenty years, and to patrol the reserve by one game warden for a period of one year. The Commonwealth stocked the land with deer and kept a game warden thereon until October, 1937.

W. F. Masden owns a farm of 350 acres which is located in Bullitt county near the land owned by the Bernheim Foundation. At the 1942 regular session of the General Assembly a resolution was passed authorizing Masden to sue the Commonwealth of Kentucky and the Kentucky Game and Fish Commission for damages done to his crops by deer during the years 1937 to 1941, inclusive. Acts 1942, Chapter 297. The resolution provided that if any judgment should be recovered same was to be paid out of the General Fund by the Department of Finance by warrant drawn on the State Treasurer. One of the "whereas" clauses of the resolution recited that "the estate of Isaac Bernheim has purchased about 15,000 acres of mountainous land located, partly in Bullitt County and partly in Nelson County, in this Commonwealth and said land is held by said estate for the Commonwealth of Kentucky and is known as the Bernheim Foundation for the rearing and protection of wild animals and wild turkeys of all kind, and whereas the Commonwealth has, through its Fish and Game Commission, placed on said land large numbers of deer and same have been prolific and increased to a very large number, and are not confined on the above said land, but are permitted to run in large droves over land adjoining and surrounding this said 15,000 acres and destroy the crops of the farmers in the surrounding country." The resolution also recited that it was adopted in order that W. F. Masden might have his "day in court," to determine by judicial action the extent of damages, if any, sustained by him and the liability therefor. Pursuant to the resolution W. F. Masden brought this action against the Commonwealth of Kentucky and the Kentucky Game and Fish Commission to recover damages in the sum of $2,100. On the trial of the case the jury returned a verdict for the plaintiff for $2,072.-25, the maximum amount permitted by the instructions, and the defendants have appealed.

It is insisted by the Commonwealth that its demurrer to the petition should have been sustained because

there is no liability on the part of the Commonwealth of Kentucky for any damage done to appellee's crops by wild deer running at large. Appellants cite and rely on Barrett v. State, 220 N. Y. 423, 116 N. E. 99, L. R. A. 1918C, 400, Ann. Cas. 1917D, 807. The New York Legislature passed an act in 1900 affording complete protection to wild beaver, and by an act of 1904 appropriated ⸱$500 for the purchase of wild beaver to restock the Adirondacks, and by an act of 1906 appropriated $1,000 more for the same purpose. Pursuant to these acts the Fish and Game Commission purchased and liberated a number of beaver. Four were placed upon Eagle creek, an inlet of the Fourth lake of the Fulton Chain. Claiming that these beaver and their descendants had girdled and destroyed a number of valuable trees on their land located in the vicinity of Eagle creek, William G. Barrett and others filed their claims for damages with the Court of Claims. The court found that the claimants had been damaged in the sum of $1,900, and an award was made to them for that sum. The award was affirmed by the Appellate Division of the Supreme Court, 173 App. Div. 986, 158 N. Y. S. 1055, but on appeal to the Court of Appeals of New York the judgment of the Appellate Division was reversed. The court approved the universally recognized rule that the state, in the exercise of its police power, has the authority to make such regulations as may be necessary to protect and conserve the game within its jurisdiction. A learned discussion of the subject may be found in Geer v. Connecticut, 161 U. S. 519, 16 S. Ct. 600, 40 L. Ed. 793. In protecting game the state is discharging a governmental function and acting in its sovereign capacity for the common benefit of all its people. Nicoulin v. O'Brien, 172 Ky. 473, 189 S. W. 724; Foster-Fountain Packing Company v. Haydel, 278 U. S. 1, 49 S. Ct. 1, 73 L. Ed. 147; Maitland v. People, 93 Colo. 59, 23 P. (2d) 116; State v. Hall, 164 Tenn. 548, 51 S. W. (2d) 851. In the Barrett case the New York court put its decision on the ground that the state, in liberating wild beaver, was discharging a governmental function and therefore was not liable for resulting damages although an individual under similar facts might have been liable. It held that the state may provide for the increase of beaver by prohibiting their destruction and may attain the same result by replacing those destroyed by fresh importations. In the opinion it was said [220 N. Y. 423, 116 N. Y. 102]: "It is true

that one who keeps wild animals in captivity must see to it at his peril that they do no damage to others. But it is not true that whenever an individual is liable for a certain act the state is liable for the same act. In liberating these beaver the state was acting as a government. As a trustee for the people and as their representative, it was doing what it thought best for the interests of the public at large. Under such circumstances, we cannot hold that the rule of such cases as those cited is applicable.''

New York has a general law permitting claims against the state to be presented in the Court of Claims. New York Code of Civil Procedure, sec. 264. In Smith v. State, 227 N. Y. 405, 125 N. E. 841, 842, 13 A. L. R. 1264, it was held that the immunity of the state from liability for the tortious acts of its officers and agents had not been waived by the act, but only its immunity from actions as to all prior claims had been waived. The court said:

''* * * it is thoroughly established that by consenting to be sued the state waives its immunity from action and nothing more. It does not thereby concede its liability in favor of the claimant or create a cause of action in his favor which did not theretofore exist. It merely gives a remedy to enforce a liability and submits itself to the jurisdiction of the court, subject to its right to interpose any lawful defense. Roberts v. State, 160 N. Y. 217, 54 N. E. 678. Immunity from an action is one thing. Immunity from liability for the torts of its officers and agents is another. Immunity from such liability may be waived by some positive enactment of the Legislature. This, as I read the section of the Code under consideration, the Legislature has not yet done.

''Statutes in derogation of the sovereignty of the state must be strictly construed, and a waiver of immunity from liability must be clearly expressed. * * * The immunity of the state from liability for the torts of its agents is based, as I have already indicated, upon the broad ground of public policy, and it is not waived by a statute conferring jurisdiction only. In the absence of a legislative enactment specifically waiving this immunity, the state cannot be subjected to a liability therefor.''

Chapter 297 of the Acts of 1942, pursuant to which this action was instituted, waived not only the Commonwealth's immunity from action but also its immunity

from liability. The act expressly provided for the payment of any judgment rendered or any settlement made. Construing a similar resolution in Commonwealth v. Hoover's Adm'r, 274 Ky. 472, 118 S. W. (2d) 741, 743, this court said: "When a state waives its privilege of immunity from suits, and permits itself to be made a defendant in a suit by an individual without any restrictions or reservations, it places itself on the same plane as an ordinary defendant, and consents that the plaintiff's claim against it may be determined in the same manner as claims in actions against individuals and corporations are determined."

In Pennington's Adm'r v. Commonwealth, 242 Ky. 527, 46 S. W. (2d) 1079, 1080, the court said: "To construe the resolution to mean that the commonwealth retained its immunity from the suit by reason of the conduct of its agents or employees is equivalent to charging the General Assembly in engaging in an absurdity. The resolution did not create a cause of action against the commonwealth, nor admit that the appellant had a cause of action or was entitled to recover against it. * *·* The resolution necessarily was a waiver of the commonwealth's immunity as a sovereign in its entirety, and does not reserve the right to rely on its exemption from liability for damages."

The Commonwealth placed a number of deer on the land owned by the Bernheim Foundation, and evidently it was its purpose to keep them on the land so far as possible by having suitable feed crops raised thereon. It may not have been contemplated that the deer would wander beyond the limits of the reserve and destroy the property of private citizens, but, under the same facts, an individual would have been liable for the damages caused by the deer. 3 C. J. S., Animals, sec. 184; Annotation in 97 Am. St. Rep. 287. We know of no reason why the General Assembly may not make provision for compensation to a citizen who has suffered damages by reason of the acts of officers or agents of the Commonwealth. It follows from what has been said that the court did not err in overruling the Commonwealth's demurrer to the petition.

Appellee's testimony as to the extent and nature of the damages to his crops was vague and unsatisfactory. He stated that during each of the years in question the deer destroyed a portion of his corn, wheat, and hay

crops, and that the damage was done in the early spring. On cross-examination he was asked when the corn was destroyed, and he said in May when the corn was about "hand high." In estimating his damages, however, he valued his crops as of the date they would have been marketed if they had not been destroyed, and he arrived at the amount claimed by him by estimating the yield and multiplying this by the price at harvest time. No deduction was allowed for the cost of cultivating, harvesting or preparing the crops for market. The court gave instructions embodying this idea, but there was no evidence as to such costs warranting the instruction. The jury allowed the appellee the full amount claimed by him, which obviously exceeds his actual loss. In Long's Ex'rs v. Bischoff, 277 Ky. 842, 127 S. W. (2d) 851, 855, the following from 17 C. J., page 887, sec. 190, was cited with approval: " 'The measure of damages for the entire destruction of a growing crop is its value at the time and place of destruction. A similar rule applies in case of the destruction of a matured crop. The measure of damages to a growing crop which is injured but not rendered worthless is the difference between the value of the crop before and after the injury at the time and place thereof.' "

We think the rule is correctly and clearly stated in Joe Chung v. Louie Fong Company, 130 Wash. 154, 226 P. 726, 728, where the court said: "The rule is established in this state that in the case of loss of growing crops by the wrong of another the measure of damages is the value of the crops at the time of the loss, which is estimated by determining the market value at the time of maturity and subtracting therefrom the cost of tilling, harvesting, and marketing."

See 25 C. J. S., Damages, sec. 85.

The appellee is of the opinion that by reason of the game laws he was deprived of his right to protect his crops against the depredations of the deer and thus to minimize his damages, but it is generally recognized that one has the constitutional right to defend his property against imminent and threatened injury by a protected animal even to the extent of killing the animal. State v. Burk, 114 Wash. 370, 195 P. 16, 21 A. L. R. 193; State v. Ward, 170 Iowa 185, 152 N. W. 501; Ann. Cas. 1917B, 978; Aldrich v. Wright, 53 N. H. 398, 16 Am. Rep. 339; State v. Rathbone, 110 Mont. 225, 100 P. (2d) 86.

868

Judgment is reversed, with directions to grant appellants a new trial, and for further proceedings consistent herewith.