**Albert "AB" CROSS, Appellant (Defendant below),**

v.

**STATE of Wyoming, Appellee (Plaintiff below).**

No. 3050.

Supreme Court of Wyoming.

April 10, 1962.

Crofts, Mockler & Meier, Lander, and Simpson, Kepler & Simpson, Cody, for appellant.

W. M. Haight, Deputy Atty. Gen., and George J. Argeris, Asst. Atty. Gen., Cheyenne, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This case involves the question as to whether or not a man may protect his property against depredation by protected game animals. This case apparently has been made a test case to determine this point. The facts, insofar as involving such right, have been stipulated by the parties herein and they have apparently to a large extent been modeled after the offered testimony in the case of State v. Rathbone, 110 Mont. 225, 100 P.2d 86. The facts seem to be reasonably accurately stated in the brief of counsel for the state and we adopt that statement. It is as follows:

By criminal complaint filed in the Justice Court, County of Fremont, before C. W. Anderson, Justice of the Peace in and for Precinct Number 1, Riverton, Wyoming, on May 16, 1960, defendant (appellant here) Albert "Ab" Cross was charged on six counts for shooting two moose contrary to and in violation of the laws of the State of Wyoming. The violations charged include two counts each for the unlawful killing by defendant of said moose without having first obtained proper license or permit from the State of Wyoming Game and Fish Commission; the killing by defendant in violation of Order Number 16 of the Wyoming Game and Fish Commission Orders for the year 1958 during a time when hunting and killing of said moose were not permitted by said commission; and the leaving and abandonment of said game animals by the defendant thereby wantonly and needlessly allowing the edible portions thereof to go to waste.

In response to each of the above described charges defendant entered a plea of not guilty and on July 25, 1960, the cause came on for hearing in the Justice Court before jury, and after hearing all the evidence and testimony the jury found the defendant Albert "Ab" Cross guilty of all charges except the charge of firing a high-powered rifle from a public road, which was the seventh count also included in said complaint. Thereupon the court imposed a fine upon the defendant in the sum of one hundred dollars for each count of the other three specified charges.

Thereafter from such finding an appeal was taken by said defendant to the District Court of Fremont County, Seventh Judicial District, sitting in Lander, Wyoming.

By stipulation filed in said district court on March 6, 1961, the defendant Albert "Ab" Cross admitted the killing of the moose in question, admitted they were killed out of season and at a time when the defendant did not possess a proper license or permit, and admitted to all facts set forth in the complaint of the state, upon which the defendant was tried on appeal. Defendant, however, asserted and presently asserts that he is not guilty of any of the crimes charged against him despite such admission of fact by reason of the fact that such killing was done by him in defense of property. The State of Wyoming therein admits that the moose in question were causing damage at the time of killing, that the damage being caused by said moose was sufficient under the law to justify the defendant's killing of said moose in the defense of his property, if the defense of justification is a proper and legal defense under the laws of this state and the facts agreed upon in the case. For purposes of establishing said facts the parties agreed that the facts appearing under subtitle "History" of defendant's brief as filed in the district court (and reincorporated in appellee's brief to the supreme court) should be incorporated in said stipulation.

The facts contained in said history are as follows:

The defendant, Albert Cross, and his father before him, have owned about 7,200 acres of land on the Dunoir River in Fremont County. George Cross, father of defendant, moved there in 1907. Wild game was non-existent there in 1907, but game animals started to appear in that area in 1915, avoiding the meadowlands. The big increase in game population and resultant trespass on meadowland became noticeable from 1937 onward.

There has been a large and increasing herd of wild game having its fall and winter range within and along the Dunoir and upper Wind River regions in Fremont County, near the town of Dubois, Wyoming, and adjacent to the Game and Fish Dennison Refuge. During the summer and fall months, these animals range and forage on the Shoshone National Forest, near the Refuge, staying well back in the mountains and away from the private lands of the defendant and his neighbors. As winter sets in, the annual migrations of wild animals begin, leading them to follow various natural courses, through the Forest Reserve, down creek bottoms, and along ridges, many of which natural trails converge and enter upon the "H—" Ranch, belonging to defendant.

This annual migration of wild game, including many head of moose, numbering one hundred twenty-five to two hundred head, has been observed yearly, commencing as early as 1915, and is induced by severe weather and the scarcity of natural feed for the animals at that period of the year. Because of the terrain and the area in, around and on the defendant's ranch, and because several streams flow out of the mountains onto the land of the defendant, it is inevitable that the migrating moose, elk, deer and other animals follow these water courses, and, consequently gather upon the ranch lands of the defendant, where they remain to graze until molested; and, when driven away, inevitably return to these grazing lands, making it their feeding grounds as long as they are able to do so.

These animals each year have done serious and substantial damage to the defendant's ranch, the extent of these damages ranging annually from fifteen hundred dollars to four thousand dollars; the principal items of damage are the consumption of pasture and other forage reserved for defendant's livestock, injury to the turf, curtailing the production of hay and other natural grasses growing on the ranch lands, serious and costly destruction of fences caused by the attempts of the moose, elk and other wild animals to jump over the fences, and either becoming entangled in the wires or breaking through them; the interference of the wild game, especially moose, with the normal ranching operations, due to the necessity for patrolling the areas which are constantly threatened by the moose in the destruction of the necessary reserves of winter and spring feed for the domestic animals, and the necessity for driving them away; the damage to fences requiring interruption of ranching operations; and finally, the disturbance caused by the moose themselves in driving them off the ranch, exciting domestic livestock thereon; and the refusal of domestic livestock to graze on, forage or eat hay or other edible substances after the same has been trampled, urinated upon and defecated upon by the moose; and the stench of moose offal, especially the urine, is so offensive to both domestic animals and humans, that it constitutes a serious menace.

It is virtually impossible to keep the moose and elk off the defendant's ranch property by fencing, for the reason that fences do not offer a serious enough obstacle to prevent entry by wild game.

The defendant has, over the years, done everything in his power to get assistance from the State Game and Fish Department to help solve his plight; he has hired and paid for riders to get the wild animals driven away; he has expended considerable sums of money hiring airplanes to "spook" the moose and elk away from his premises; he has been forced into long drawn out and expensive litigation with the Game and Fish Department over the years in an effort to induce the department to enforce sufficient control to protect the residents in this area; this defendant and various of his neighbors have been forced to support and maintain this ever-increasing herd of wild game species and have been helpless to prevent the wild game from virtually "taking over" the ranching operations by belligerently driving cattle from feed grounds, by chasing horses, by chasing hired help and their families in-

doors, by usurping and defending their usurpation of sheds, barns, hay corrals, etc.; children are permitted to carry firearms from ranches to school as a protection against the quarrelsome moose; and defendant has experienced perennial frustration in attempting to control the wild game herds and protect his property with insufficient help from the Game and Fish Department.

Defendant and the Game and Fish Department used guns and cherry bombs and other means to "spook" the moose away, but this was ineffective; on the 12th of February, 1959, two moose were in his meadow feeding; defendant had chased them out before; he had tried to "spook" them; one ran into his fence and became entangled in the wire, and, in her efforts to free herself, tore down considerable good fence belonging to defendant; defendant then shot the moose in defense of his property which was being damaged in his presence, and therefore pleads justification for the said offense.

Both parties further agreed in the district court that by reason of the foregoing Stipulation of Fact there remained no factual issue for determination by the jury, and that none of the facts which constitute grounds for prosecution by the state nor none of the facts which constitute grounds for the defense of justification by the defendant were in conflict or dispute and that there remained, therefore, only the single issue of law to be determined by that Honorable Court, namely:

> "Under the laws of the State of Wyoming and the facts agreed upon in the case, is the defense of justification available to the defendant in avoidance of the criminal charges made against the defendant."

The parties further stipulated therein that in the event such defense be available to the defendant, the complaint against him and all counts therein contained ought to be dismissed, but that in the event that such defense be not available to defendant in the district or supreme court, that he be guilty as charged.

Whereupon the matter having come before the district court, and the court having heard the arguments of counsel and having acquainted itself with the law contained in the briefs of parties filed with the court, and having been fully advised in the premises, did find generally in favor of the State of Wyoming and against the defendant Albert "Ab" Cross on the issue of law stipulated, and therefore ordered, adjudged and decreed that the judgment and sentence of the Justice Court of Fremont County, Wyoming, before C. W. Anderson, Justice of the Peace, Riverton, Wyoming, Precinct No. 1, be affirmed. From this Order of Affirmance, defendant appeals.

■ It is argued by the state that the legislature has enacted a comprehensive game law with certain exceptions and that, hence, it cannot be contended that other exceptions may be made. If it is true that the legislature intended that constitutional rights of persons could not be asserted in this connection, then it clearly exceeded its authority. It is further argued that the legislature may modify the common law, which is true, and that it has modified the common law otherwise applicable herein. A lengthy argument as to the police power of the legislature has been made in the brief of counsel for the state. It is readily admitted that, as argued by the state, the rights of individuals · are subject to certain reasonable regulations by the legislature under the police power, but the police power too has its limitations and cannot come in direct conflict with constitutional provisions. State v. Langley, 53 Wyo. 332, 84 P.2d 767. So we shall proceed to consider whether or not the legislature can, pursuant to police power, prohibit a man from protecting his property from the depredations of wild animals. · The authorities are practically unanimous on that point.

It is stated in 38 C.J.S. Game § 10a, p. 12, as follows:

> "*Legal justification* may always be interposed as a defense by a person charged with killing a wild animal contrary to law. Hence the killing of

game protected by the statute or regulations is not prevented by them when reasonably necessary for the protection of person or property * * *."

And in 24 Am.Jur. Game and Game Laws § 12, it is stated:

"In general, a statute forbidding the killing of game under penalty does not apply to a killing which is necessary for the defense of person or property. To justify such a killing, it must be reasonably necessary for the protection of a person or property. * * *"

The rule here stated is supported by the following cases: Aldrich v. Wright , 53 N.H. 398, 16 Am.Rep. 339; Cook v. State, 192 Wash. 602, 74 P.2d 199; State v. Burk, 114 Wash. 370, 195 P. 16, 21 A.L.R. 193; State v. Rathbone, 110 Mont. 225, 100 P.2d 86; State v. Ward, 170 Iowa 185, 152 N.W. 501, Ann.Cas.1917B, 978; Cotton v. State, 31 Ala.App. 399, 17 So.2d 590; Commonwealth v. Masden, 295 Ky. 861, 175 S.W.2d 1004, 169 A.L.R. 101; Commonwealth v. Riggles, 39 Pa.Dist. & Co.R. 188. Thus in State v. Ward, supra, the court stated at 152 N.W. 502:

"By way of analogy we may note that the plea of reasonable self-defense may always be interposed in justification of the killing of a human being. We see no fair reason for holding that the same plea may not be interposed in justification of the killing of a goat or a deer. The right of defense of person and property is a constitutional right (article 1, § 1, Const.Iowa), and is recognized in the construction of all statutes. If in this case it was reasonably necessary for the defendant to kill the deer in question in order to prevent substantial injury to his property, such fact, we have no doubt, would afford justification for the killing. * * *"

In State v. Rathbone, supra, at 100 P.2d 90, the court stated as follows:

"* * * Article III of the Constitution is 'A Declaration Of Rights Of The People Of The State Of Montana.'

Section 3 thereof reads as follows: 'All persons are born equally free, and have certain natural, essential, and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties, of acquiring, possessing, and protecting property, and of seeking and obtaining their safety and happiness in all lawful ways.' * * *

"These constitutional provisions enunciate natural, fundamental and inalienable rights enjoyed by and guaranteed to every person residing within the State of Montana. They are absolute and self-executing in so far as they limit the power of the legislature to restrict these rights of the people for the reason that sec. 29 of the same article provides: 'The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.' * * *"

In Aldrich v. Wright, supra, the court stated at 16 Am.Rep. 340, 341:

" 'All men have certain natural, essential and inherent rights, among which are the enjoying and defending life and liberty, acquiring, possessing and protecting property.' Bill of Rights, art. 2. In this declaration of the right of defending life and liberty, and protecting property, the Bill of Rights, more properly called the Declaration of Rights, professes to set forth a mere recognition of a natural right. The right thus recognized is maintained by the elementary principles of the common law, which are, in general, adopted by the ninetieth article of the constitution, subject to legislative alteration and repeal; as a fundamental and essential right, the defense of life, liberty and property is here put, by a special guaranty, above the altering and repealing power of the legislature."

Counsel for the state claim that these cases are not in point. They say that they have

been decided under a constitutional provision which directly gives the right to protect property. For instance, the Constitution of Pennsylvania, as also the constitutions of a number of other states, provides:

> "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Art. 1, § 1, Const.Pa., P.S.

Our Constitution does not have the exact wording of the Constitution of Pennsylvania and so counsel claim that the right to protect property is not a constitutional right. We think that the brief of counsel for the state does a grave injustice to the intelligence and statesmanship of the able framers of our Constitution, the memory of some of whom like that of the late Chief Justice Potter has not yet faded into the distant past. It is unbelievable that the inherent and inalienable right to protect property, as well as life and liberty, recognized long before the Declaration of Independence, was ignored or omitted from our Constitution or is nullified thereby. We discussed inalienable rights at some length in State v. Langley, 53 Wyo. 332, 84 P.2d 767, 769, 770, and stated as follows:

> "* * * With the Renaissance began a new period in human history. Thoughts of liberty and freedom took possession of the minds of men, first in the field of religion, then of politics, later in the field of economics. It came to be a part of the legal philosophy of the times that each man has, as such, and because he is a human being, certain natural, inherent and indefeasible rights of which no government should, or has the right to, deprive him. * * * The doctrine of natural and inherent rights to life, liberty and property was announced in the Declaration of Independence, in the constitutions of New Hampshire, Virginia, and Pennsylvania in 1776, in the con-

stitution of Vermont in 1777, in that of Massachusetts in 1780, in that of New Jersey in 1784. Other constitutions followed in the same vein. Section 3 of Article 1 of our own constitution refers to natural rights of man and section 2 of the same article provides that 'in their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal.' There are those who maintain that man has no natural rights; that none can exist except in society, and that whatever rights he has, he, accordingly, receives from society. However that may be theoretically, natural rights are recognized by our constitution. The doctrine is part of the positive law of the land, and section 6 of Article 1 of our constitution provides that no person shall be deprived of life, liberty or property without due process of law. The article evidently refers to the natural and inherent rights otherwise mentioned, and so it becomes apparent, particularly in view of the history above outlined, that the framers of the constitution meant that the *protection* thereof is important and that they, though loosely defined, should not be unduly invaded." (Emphasis supplied.) See also section 7, Article 1.

The Constitution of Minnesota does not contain the wording of the Constitution of Pennsylvania above quoted but merely provides that no person shall be deprived of life, liberty or property without due process of law, the same provision contained in our Constitution. The court of that state, discussing the inherent rights of people in the case of Thiede v. Town of Scandia Valley, 217 Minn. 218, 14 N.W.2d 400, 405 (citing many authorities which are omitted from this quotation) states eloquently as follows:

> "1. The entire social and political structure of America rests upon the cornerstone that all men have certain rights which are inherent and inalienable. Among these are the right to be

protected in life, liberty, and the pursuit of happiness; the right to acquire, possess, and enjoy property; and the right to establish a home and family relations—all under equal and impartial laws which govern the whole community and each member thereof. * * * The rights, privileges, and immunities of citizens exist notwithstanding there is no specific enumeration thereof in State Constitutions. 'These instruments measure the powers of rulers, but they do not measure the rights of the governed.' 1 Cooley, Constitutional Limitations, 8 Ed., pp. ·95, 533; * * *. 'The fundamental maxims of a free government seem to require, that the rights of personal liberty and private property should be held sacred.' Wilkinson v. Leland, 2 Pet. 627, 657, 27 U.S. 627, 7 L.Ed. 542. Government would not be free if they were not so held.

"The Constitution of Minnesota specifically recognizes the right to 'life, liberty or property' (art. 1, § 7), but does not attempt to enumerate all 'the rights or privileges secured to any citizen thereof' (see art. 1, § 2). It, however, significantly provides: 'The enumeration of rights in this constitution shall not be construed to deny or impair others retained by and inherent in the people.' (art. 1, § 16.)" See also section 36, Article 1 of our constitution.

If any further authorities were necessary to show that counsel for the state are utterly wrong in the contention above mentioned, we need only to refer to the Washington cases above cited which hold that a person has a right to protect his property against the depredations of wild animals if reasonably necessary. We have examined the Constitution of Washington. It contains no such wording as the Constitution of Pennsylvania above quoted, but it contains the same provision as our Constitution that no person shall be deprived of life, liberty or property without due process of law. If he cannot be deprived thereof, he necessarily must have the right to protect it. The Washington court in State v. Burk, supra, cited the Iowa case of State v. Ward, 170 Iowa 185, 152 N.W. 501, Ann.Cas.1917B, 978, and used the same quotation from that case as we have used heretofore in this opinion.

■ All the cases agree that before the wild game may be killed, it must be reasonably necessary to protect one's property. That matter has been discussed at length in the various cases which have been cited.

The situation as to wild animals is very much the same in the State of Montana as it is in this state. The court in the Rathbone case above cited stated that it would not undertake to state under what particular facts a killing of a wild animal would be justified and that each case must be decided on its own facts. We think that that should be true in this state. The Montana case further stated that to justify such killing it must be reasonably necessary and that all other remedies should be exhausted before killing such animals. The statement as to the exhaustion of remedies is indefinite and whether the remedies have been exhausted must depend on the facts in a particular case. The thought in that connection would seem to be implied in the rule that the killing must be reasonably necessary. The court in the Montana case referred to complaints made by the landowner so that the Game and Fish Department might be advised of the facts of the depredations. It held such complaints admissible in evidence for the purpose of determining as to whether or not the landowner had exhausted his remedies. The agreed statements in the case at bar show that a great many complaints have been made by the landowner so we need not consider that matter any further.

■ Counsel for the state argue that a remedy is available to the property owner whose property is damaged or destroyed by wild animals under the provisions of § 23–15, W.S.1957. It provides that the Game and Fish Commission has power "To au-

thorize the game warden to kill any of the wild life in this state when in the judgment of the commission said killing is necessary." We can see no force in the argument of the state if counsel refer to anything more than a general notice by the landowner heretofore mentioned.

■ Section 23-117, W.S.1957, provides that a person whose property is damaged by wild animals may file a claim with the Game and Fish Commission for the amount of damages sustained. It is argued by the state that this gives such landowner an adequate remedy. We hardly think that a landowner should be compelled to waive his constitutional rights by filing a claim for damages, perhaps every month, every two months, every year, or at other intervals, and recover damages perhaps after protracted litigation. The argument of the state carried to its logical conclusion would mean that a person must, before killing a wild animal, permit his property, even his own home, to be invaded and destroyed. It would mean a relinquishment of his constitutional rights for money which may be recovered by a claim filed with the commission. Counsel for the state have cited us no authority, and the case of Commonwealth v. Masden, 295 Ky. 861, 175 S.W.2d 1004, 169 A.L.R. 101, holds against the contention of the state. It appears in that case that the legislature of Kentucky authorized the recovery of damages caused by wild animals just as the statute in this case. The suit for damages was brought and held to be proper but was reversed on account of the fact that the damages allowed were too large. In that case the landowner labored under the same mistake as the state does in the case at bar. Speaking of the landowner's constitutional rights the court stated at 175 S.W.2d 1008:

"The appellee is of the opinion that by reason of the game laws he was deprived of his right to protect his crops against the depredations of the deer and thus to minimize his damages, but it is generally recognized that one has the constitutional right to defend his property against imminent and threatened injury by a protected animal even to the extent of killing the animal.
* * *"

The court then cites the Washington, Iowa, New Hampshire and Montana cases which we have heretofore cited in this opinion.

■■ In conclusion, though we may be guilty of tautology, we think that before a defendant can resort to force in protecting his property from wild animals protected by law he should use every remedy available to him before killing such animals. He should use only such force as may be reasonably necessary and suitable to protect his property and must use only such force and means as a reasonably prudent man would use under the circumstances.

However, in view of the stipulation between the parties herein, judgment herein is reversed and the complaint against the defendant should be dismissed.

Reversed with direction.