**STATE v MOHLER**
**STATE v BROWN**

Ohio Appeals, 5th Dist, Perry Co

Decided Nov 16, 1932

Dwight Cusick, Prosecuting Attorney, New Lexington, Emerson C. Wagner, New Lexington, and Gilbert Bettman, Attorney General, Columbus, for plaintiff in error.

T. M. Potter, New Lexington, for defendants in error.

SHERICK, PJ.

Now if the rabbit was lawfully taken, as it no doubt was, Mohler could lawfully possess it, unless the statute or another related section of the act made a part of the statute by direct incorporation therein forbids its possession out of season.

The state advances several reasons why Mohler's possession was unlawful. These we shall now consider. It is argued that there is no evidence that the rabbit Mohler shot was found "doing actual and substantial damage" to the trees. The Legislature well knew that wild rabbits are nocturnal, and during that period they usually feed. It enacted a provision against hunting in the night season. It was not the absurd intention of the Legislature that an owner or tenant might shoot a certain particular rabbit when it was actually caught in a deliberate act of cutting fruit trees, but it was intended that an owner or tenant might protect his property from destruction by wild animals when there was a real and existing injury being then done to his property. The injury and damage must be of considerable extent, not just fanciful or trivial. It is not denied in this case that actual and substantial damage was being done to the trees in the Mohler orchards.

It is also claimed that the Legislature intended to restrict the power to take game damaging crops and trees by prohibiting removal of the skin or hide from the carcass-

es thereof, with the result that such could not be used for food. And it is advanced that when Mohler decapitated the rabbit and stated that he intended to eat it, he violated the provision of §1396, GC.

In support of this reasoning we are directed to that portion of §1398, GC, which provides: "In the case however, of a fur-bearing animal killed because of injury done by it to property, or killed because it has become a nuisance, the hide, skin or pelt of such animal shall be left on the carcass and not removed therefrom." It is said that this is indicative of legislative intent to deny one the right of possession of a game animal taken lawfully out of season. We are unable to appreciate this reasoning.

We note that §1390, GC, defines "Game Quadrupeds" as a "hare or rabbit, gray squirrel, fox squirrel and deer," and "quadrupeds" as "game quadrupeds and fur-bearing animals." The same section defines "fur-bearing animals" as "fox, mink, raccoon, skunk, muskrat, opossum." Now applying these statutory definitions to §1398, GC, it is clear that the Legislature did not intend to apply this prohibition to game quadrupeds but only to fur-bearing animals. The Legislature no doubt deliberately omitted game quadrupeds from this section with full realization of the absurdity that food should be permitted to be wasted when it was lawfully taken, even out of season.

That portion of §1398, GC, relied upon is not only directed to protect fur-bearing animals out of season from extermination, but to remove a pretext for their slaughter for profit by a sale of their pelts. A landowner or tenant thereby has no incentive to kill fur-bearing animals except for damage to his property. By statute, and from human repugnancy, he cannot sell the carcass of either out of season. True one may eat a game animal out of season, and thereby gain some profit, but he cannot commercialize a part of it, as in the case of a fur-bearing animal.

Our attention is next directed to a portion of §1395, GC, providing that the "finding of a bird, fish, game or fur-bearing animal, or part thereof, unlawfully in the possession of any person shall be prima facie evidence of the guilt of such person."

This is no doubt a wise provision. It is not conclusive, however, for one may show that he lawfully took and was in lawful possession of the forbidden animal. This Mohler fully proved in his case, and this the state made no effort to deny. We therefore conclude under the facts and law, as we understand them, that Mohler was improperly convicted and that the Court of Common Pleas was correct in its reversal. §1396 GC is a criminal statute, it must be strictly construed in the defendant's favor, and we cannot read thereinto that portion of §1398, GC, quoted.

And now considering the case of Brown, we note that his defense is that he was not hunting, but was only training his young dog. In the first place, we must hold that Brown was not an owner, tenant or bona fide employe, hence he cannot come within the excepted class mentioned in §1396, GC. Brown knew that Mohler was going hunting out of season. He knew that the apple trees were being injured and destroyed. He knew Mohler was a tenant, and he knew Mohler had a lawful right to protect the owner's property and to take rabbits out of season. Brown, however, was at best a guest or participant in the hunting expedition; that is, he and his dog were assisting Mohler in his purpose. The dog was old enough to and did pursue rabbits, and Brown permitted his dog to do so. Now to our notion, the fact that Brown had no gun is not conclusive that he was not taking or pursuing rabbits. His purpose was to assist Mohler in his hunting by inciting his dog to the chase. This seems to us to be more than training one's dog.

One or more may engage in hunting even without a gun. In the past it was not infrequent to take rabbits by the use of a shovel or ferret. It is not improbable or inconceivable that one should have a gun and the other a dog. This was no doubt the fact in this action. From the facts in Brown's case it is easy to see how his defense did not create a reasonable doubt in the mind of the trial magistrate. There was sufficient creditable evidence to support a conviction, and we see no reason or cause for the Common Pleas Court's substitution of its judgment for that of the trial magistrate who acted as both court and jury in this trial. His judgment of guilty must be given the same weight and sanctity as if a jury had so determined.

It should further be stated that the magistrate, while performing a jury's duty, was the judge of the credibility of the witnesses; in that field neither the Common Pleas Court nor this court had or has a right to speculate. It is well at this point to say that the evidence discloses that Brown sought to induce the game wardens to refrain from making a charge against him, and that upon cross-examination he admits a conviction of a prior similar charge. These

facts, no doubt, had considerable weight with the trial magistrate.

Now it may be understood that we fully recognize the right of one to train his dog in the field out of season, but it must be done in such a way that the game will not be injured or brought to a gun for slaughter. His place is not with one who has the intent to hunt the animal that the dog is being taught to pursue. If he does so, he is hunting and pursuing game, not just training his dog.

The defendant Brown makes the claim that the affidavit is insufficient in that it is not charged that he pursued rabbits with "intent to catch, kill or injure them." To our notion intent may or may not be material in a prosecution under the game act. The statute does not make intent a part of the gist of the offense. Now, if the affidavit in this case was thereby defective, it should have been attacked in due season by motion to quash. This not having been done, it must now be considered that such defect or insufficiency, if such there was, has been waived. Surely the defendant Brown has in no way been prejudiced by any such insufficiency.

But one more claim should be considered. It is said that §1396, GC, does not make it an offense to pursue a game animal, and that it only forbids taking and possession. But again referring to §1390, GC, which defines and construes the words and phrases used in the act, we find that "take or taking: Includes pursuing, * * * hunting * * * quadrupeds, * * * whether they result in taking or not; includes also every attempt to take and every act of assistance to every other person in taking or attempting to take * * * quadrupeds."

It is therefore this court's judgment that the judgment of reversal of the Common Pleas Court in the case of Mohler be affirmed; and that the judgment of that court in the case of Brown be reversed, and that of the trial magistrate be affirmed, to which court Brown's case is remanded for execution.

Judgment accordingly.

LEMERT and MONTGOMERY, JJ, concur.