## Commonwealth v. Hagan

C.P. of Elk County, nos. 1999—205 and 206.

*Thomas G.G. Coppolo,* for Commonwealth.
*Joseph E. Buckley,* for defendant.

ROOF, *P.J.,* January 3, 2000—

## I. PROCEDURAL HISTORY/
## FACTUAL BACKGROUND

On July 27, 1999, the Commonwealth of Pennsylvania, Pennsylvania Game Commission, charged the de-

fendant with unlawfully killing a deer and an elk. Criminal charges were instituted by filing of citations in the office of District Justice Donald A. Wilhelm for the alleged unlawful killing of an elk on July 21, 1999, and for the alleged unlawful killing of a deer on July 22, 1999. At hearing before the district justice on August 24, 1999, the defendant was found guilty of both charges. Thereafter, on September 2, 1999, the defendant timely filed his appeal from the convictions.

On September 30, 1999, the defendant filed his omnibus motion asking that the two convictions be consolidated for purposes of appeal and moving for dismissal of the charges. By order of October 1, 1999, we scheduled argument on the motions for November 12, 1999. We are in receipt of briefs from the Commonwealth and the defendant, and the issue is now ripe for disposition.

The charges arise out of the killing of an elk on July 21, 1999, and the killing of a deer on July 22, 1999. As a result of the killings, the defendant was charged by the Pennsylvania Game Commission with two counts of violating the Game and Wildlife Code, 34 Pa.C.S. §2307(a), summary offenses. The killings are deemed unlawful for occurring in closed season. The defendant admits killing the game but contends that the killings were justified in the protection of his property. The defendant seeks dismissal of the charges, claiming that the statute is unconstitutional on its face and as applied. The question, thus, presented is whether section 2307(a) of the code adequately addresses the defendant's constitutional right to protect his property under the circumstances, or whether it unconstitutionally abridges that right.

This is a case in which a law having as its purpose and intent the protection and preservation of our wildlife has come in conflict with the fundamental and inalienable right that every property owner has to defend his property. Upon the contention that section 2307(a) of the code abrogates this right, we are asked to determine its constitutionality.

At argument and in its brief, the Commonwealth primarily relies upon two positions in advancing the constitutionality of the statute:

"(1) that the statute is a reasonable exercise of police power; and

"(2) that Article 1, Section 27 of our state constitution ('natural resources and the public estate') conflicts Article 1, Section 1 of the constitution ('inherent rights of mankind') and a balancing analysis supports the constitutionality of the statute for the public good."

## II. OVERVIEW OF STATUTE AND CODE

Section 2307 of the code, entitled "Unlawful taking or possession of game or wildlife," at subsection (a) provides:

"It is unlawful for any person to aid, abet, attempt or conspire to hunt for or take or possess, use, transport or conceal any game or wildlife unlawful taken or not properly marked or any part thereof, or to hunt for, trap, take, kill, transport, conceal, possess or use any game or wildlife contrary to the provisions of this title."

The commission is charged with the duty to protect, propagate, manage and preserve the game and wildlife of this Commonwealth and to enforce the laws relating

thereto. 34 Pa.C.S. §322(a). In administering and enforcing the provisions of the code, the commission is mandated to promulgate regulations establishing seasons for the lawful killing of game. 34 Pa.C.S. §322(c)(1); 34 Pa.C.S. §2102(b).

Factually, there is no question here that the elk and deer are "game" and were killed in a closed season contrary to the regulations of the commission as permitted to be established under the code. Because the defendant seeks to justify his killing of the game based on the need to protect his property, we have examined the code for provisions allowing destruction of game for protection. 34 Pa.C.S. §2121, entitled "Killing game or wildlife to protect property," is within subchapter B of the code (Destruction for agricultural protection) and provides, in pertinent part, as follows:

"(a) *General rule.*—Subject to any limitations in this subchapter, nothing in this title shall be construed to prohibit any *person* from killing any game or wildlife:

"(1) which the *person* may witness actually engaged in the material destruction of cultivated crops, fruit trees, vegetables, livestock, poultry or beehives;

"(2) anywhere on the property under the *person's* control, including detached lands being cultivated for the same or similar purposes, immediately following such destruction; or

"(3) where the presence of the game or wildlife on any cultivated lands or fruit orchards is just cause for reasonable apprehension of additional imminent destruction. . . .

"(b) *Protected game or wildlife.*—Before any game or wildlife, which may be designated by regulation of

the commission, or any bird or animal classified as threatened or endangered may be killed, every reasonable effort shall be made to live trap and transfer such game or wildlife. The trapping and transferring shall be done in cooperation with a representative of the commission.

"(c) *Definition.*—As used in this subchapter the word *'person' shall be limited to any person cultivating, as a primary means of gaining a livelihood,* any lands for general or specialized crop purposes, truck farming or fruit orchard or nursery being regularly maintained, . . . ." (emphasis added)

The import of section 2121 of the code is that it is not unlawful for one cultivating, as a primary means of gaining a livelihood, to kill game or wildlife when the killing occurs while the game or wildlife is actually engaged in material destruction; immediately following such destruction; or where the presence of the game or wildlife gives just cause for reasonable apprehension of additional imminent destruction. We also note for purposes of our analysis that the subject game killed, the elk and deer, have not been classified as "threatened" or "endangered" by the commission. See 34 Pa.C.S. §102. Instantly, there is no dispute that the defendant was not cultivating as a primary means of gaining a livelihood.

In reviewing the code, we also find that our legislature has legitimized the killing of game or wildlife where it is "clearly evident from all the facts that a human is endangered to a degree that the immediate destruction of the game or wildlife is necessary." 34 Pa.C.S. §2141(a). Nowhere, however, does the code legitimize a killing to protect property where one does not cultivate for a livelihood.

We also mention sections 2509 and 2511 of the code as imposing criminal sanctions against any person engaged in hunting who damages real or personal property of another, whether public or privately owned. Yet, no recourse exists for damage caused by Commonwealth-owned game and wildlife.

Finally, since our reference in this opinion to Pennsylvania case law involves analyses given by our sister courts of common pleas to the predecessor statute to section 2307(a), we believe it convenient, for illustrative purposes, to cite in pertinent part the provisions of the predecessor Game Law that were before our sister courts when presented with issues similar to that now before us.

Section 1311.701, 34 P.S., appears to be the predecessor statute to section 2307 of the code. It provided in pertinent part as follows:

"Except as otherwise provided in this Act, it is unlawful for any person to take or kill or wound or attempt to take or wound, or assist in the taking, killing or wounding of any game, except during the open season, . . . ."

Section 1311.724 is the predecessor statute to section 2121 of the code. It provided, in pertinent part, as follows:

"(1) Nothing in this Act shall be construed to prevent any person . . . from killing . . . any . . . animals . . . he may find actually engaged in the material destruction of cultivated crops; or from destroying said animals . . . anywhere on the property under his control immediately following such destruction, or where the presence of said . . . animal on any such cultivated lands or fruit orchards is just cause for reasonable apprehension of additional imminent destruction.

"The word 'person' . . . shall mean any person actually residing upon and cultivating as a means of gaining a livelihood any lands for general farm crop purposes, commercial trucking, or fruit orchard or nursery being regularly maintained for commercial purposes. . . ."

It is apparent that the statutes interpreted by earlier Pennsylvania court opinions are substantially similar to the statutes sub judice.

## III. OVERVIEW OF PENNSYLVANIA CONSTITUTION AS HERE APPLICABLE

The defendant relies upon Article 1, Section 1 of our Pennsylvania Constitution in attacking the constitutionality of section 2307(a) of the code. Article 1, Section 1 declares the inherent rights of mankind as follows:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among of which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

The Commonwealth contends that these inherent rights are in conflict with Article 1, Section 27 of our Pennsylvania Constitution, entitled, "Natural resources and the public estate." Article 1, Section 27 states:

"The people have a right to clean air, pure water, and to the preservation of natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

Significantly, with regard to application of the above constitutional provisions, the Commonwealth at argument emphasized that the common pleas opinions finding the predecessor sections of the Game Law unconstitutional pre-dated the adoption of Article 1, Section 27 of our state constitution. It, thus, appears that the Commonwealth primarily relies upon Article 1, Section 27 as the source through which sections 2307(a) and 2121 retain their constitutionality.

Our research unveils no Pennsylvania appellate court decision interpreting the constitutionality of sections 2307 and 2121. As previously mentioned, several courts of common pleas, however, have had occasion to act upon the predecessor statutes to sections 2307 and 2121 of the code. We will later examine each of these opinions, and as case law is minimal in Pennsylvania on the issue, our analysis will be guided by the opinions of appellate courts of other state jurisdictions.

## IV. STANDARD OF REVIEW WHERE CONSTITUTIONALITY OF STATUTE AT ISSUE

In reviewing the constitutionality of a statute, our inquiry must begin with an understanding of the purpose of the statute. It is easily ascertained that the legislature's purpose in enacting the code, specifically section 2307, was for the protection and preservation of Pennsylvania's game and wildlife. Toward fulfillment of this purpose, the duty of the commission is "to protect, propagate, manage and preserve the game and wildlife of this Commonwealth and to enforce by proper actions and proceedings, the laws of this Commonwealth relating thereto." 34 Pa.C.S. §322(a). In pursuit of this duty, the

commission "has the power and duty to take all actions necessary for the administration and enforcement of this title [Game and Wildlife Code]." 34 Pa.C.S. §322(b). In order to administrate and enforce the code, the commission has provided the specific power, among others, to fix seasons for any species of game or wildlife and define geographic limitations or restrictions. 34 Pa.C.S. §§322(c)(1)(4), 2102(b). Deer and elk are game or wildlife and owned by the commission as an independent agency of the Commonwealth. 34 Pa.C.S. §§102, 103. It, thus, cannot be disputed that the Commonwealth, in the exercise of its police power, has the authority to make regulations in conservation of game and wildlife within its jurisdiction. The police power by which the legislature has the right to pass legislation for the preservation and conservation of its game or wildlife is, however, limited by the constitution.

The constitutional provision at issue [Article 1, Section 1] grants certain "inalienable rights." Among these natural rights is "acquiring, possessing and protecting property. . . ." If the statute under which the defendant was convicted is construed in such a way as to make the defense of property a crime when reasonably necessary, it follows that the constitutionality of the statute comes into question. However broad the scope of the police power, it is always subject to the rule that the legislature may not exercise any power that is expressly or impliedly forbidden by the state constitution. *Commonwealth v. Vrooman,* 164 Pa. 306, 309, 30 A. 217 (1894).

It is not the function of a court to question the wisdom or expediency of legislation, but a court must consider it only as affected by the constitution. *Commonwealth ex rel. Kelley v. Clark,* 327 Pa. 181, 193 A. 634 (1937);

*Commonwealth ex rel. Kelley v. Cantrell,* 327 Pa. 369, 193 A. 655 (1937). A legislative intent to violate the constitution is never to be presumed, if language of a statute can be satisfied by a contrary construction. *Commonwealth v. Schuylkill Trust Company,* 327 Pa. 127, 193 A. 638 (1937), *affirmed,* 58 S.Ct. 595, 302 U.S. 506, 82 L.Ed. 392. It is the duty of every court to seek out a construction which will support legislative interpretation of the constitution and nothing but a clear violation can nullify an act of assembly on constitutional grounds. *Commonwealth v. Reitz,* 156 Pa. Super. 122, 39 A.2d 522 (1944).

We believe our proper purpose is to interpret section 2307(a) of the code in harmony with the constitution if that can reasonably be done. We have a duty to liberally construe statutes in order to save them from constitutional infirmities given the presumption of their constitutionality.

With these standards in mind, we undertake a review of case law both within and outside this Commonwealth and invoke our humble analysis. We are mindful, as was the Court of Common Pleas of Franklin County in *Commonwealth v. Gilbert,* 5 D.&C. 443 (Franklin Cty. 1924) that the question that we are being asked to decide is of great importance. It is most especially important to the people of Elk and adjoining counties where the elk herd has become an attraction of great magnitude. Unquestionably, the issue has had a divisive impact among varying interests: the environmentalists, the naturalists, the preservationists, the tourists, and the damaged property owners. Notwithstanding the admirable concerns and objectives of these varying interests, we must focus upon

the one issue as presented to us in the context of this litigation—whether one who owns and cultivates his own garden, not as means of primary livelihood, is to be deprived of his property in order to preserve the game.

## V. PENNSYLVANIA CASES

In *Commonwealth v. Gilbert,* 5 D.&C. 443 (Franklin Cty. 1924), the defendant appealed a summary conviction for violating the law, making it illegal to shoot a doe out-of-season. At the time of the shooting, the defendant was an employee of an orchard grower who had been experiencing damage to his orchards. The deer was not, at the time of the shooting, actually engaged in doing damage. As here, the defendant in *Gilbert* contended that the portion of the Act under which he was convicted was in contravention of the constitution of the State of Pennsylvania, Article 1, Section 1. In overturning the conviction, the court stated:

"We now hold that the owner of real estate has an indefeasible right to destroy a deer when necessary to protect his crop. Any legislation which undertakes to deprive him of that right contravenes the constitution." *Id.* at 446.

Not only the holding of *Gilbert* but also the language of the court deserves repeating, particularly, in that elk and deer are the property of the Commonwealth.

"Must they [property owners] endure this [damage] without any hope of compensation? If a cow goes astray from its owner and wanders into the neighbor's property and does damage, the person damaged has recourse to the owner of the cow for compensation. If swine enters upon one's land and root out his potatoes or damages

corn, the owner of the swine is responsible for the damage, and this being whether the land be fenced or not. If marauding men and night prowlers were to enter the orchard and commit the same depredations that the deer commit, the State of Pennsylvania would reach out its strong arm and compel payment of damages and punish them as well. But when wild deer commit depredations, the injured person is compelled to sit by and bear his loss in silence. If a citizen of the state must sit by and see the fruits of his labor destroyed by wild deer owned by the state, then is the guarantee of the constitution, which reads, 'All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property,' a farce." *Id.* at 445-46.

Factually, we recognize that it appears that the property owner in *Gilbert* primarily engaged in cultivation of orchards as a livelihood.

In *Commonwealth v. Riggles,* 39 D.&C. 188 (Clinton Cty. 1940), the defendant was convicted before a justice of the peace for having unlawfully killed two wild deer under former section 724 of the Game Law, 34 P.S. §1311.724. The killing occurred while the deer were damaging the garden and crops of the defendant. The defendant alleged that the game law provision under which he was convicted was unconstitutional as being a violation of Article 1, Section 1 of the state constitution. Factually, the purpose of raising the garden was to supplement the earnings of the defendant, and it was not a primary means of livelihood. The Commonwealth argued that the conviction was justified as the defendant did not fall within the exception permitting the killing by one

cultivating "as a means of gaining a livelihood" lands for general farm crop purposes. While distinguishing the facts from *Gilbert, supra,* the trial court nonetheless found the reasoning of the *Gilbert* court to be applicable and adopted its reasoning. The *Riggles* court stated:

"In our opinion, the owner, whether in whole or in part, of real estate has an indefeasible right to destroy a deer when necessary to protect his property. Therefore, insofar as section 724 of the Game Law attempts to deprive him of this right it violates Article 1, Section 1 of the constitution, and is unconstitutional. . . . That cultivation of a garden under the circumstances shown in this particular case is a method of obtaining income or support or subsistence and, to the extent that it contributes thereto, it is 'a means of gaining a livelihood.' " *Id.* at 194-95.

In *Commonwealth v. Braun,* 88 D.&C. 257 (Elk Cty. 1954), this very court had before it the construction of section 724 of the Game Law, 34 P.S. §1311.724. In *Braun,* a bear was killed because of destruction to crops. The killing occurred not by the parent property owners but by their son who was requested by the parents to destroy the bear. Prior to the killing, the son called the game protector and explained the circumstances to him, but the game protector made no comment, leaving the son to presume that he could proceed to kill the bear. After the shooting, the defendant was charged with the illegal killing of a bear. The defendant was found guilty before the justice of the peace and, on appeal, the trial court overturned the conviction and found the defendant not guilty. Commenting on the constitutionality of the law, the court stated:

"We further are of the opinion that this section of the law is unconstitutional in that it deprives a *man* of the

right to protect his life, home and property and what, under the circumstances in this case, was the most natural thing to do, when, being unable to protect himself, his home and his wife he called upon his son to assist." *Id.* at 260.

It is unclear whether the defendant in *Braun* harvested crops as a means of livelihood. Moreover, we should point out that the trial court in overturning the conviction appeared to rely to a great extent on the ambiguous and indefinite information the defendant-son received when he questioned the game protector as to whether the bear could be killed.

In *Commonwealth v. McGowan,* 9 D.&C.2d 398 (Beaver Cty. 1956), the defendant admitted shooting pigeons as a matter of protecting his property. The droppings of the pigeons washed down the defendant's roof gutter and contaminated defendant's water to an extent that the water had an unusual color and was unfit for washing purposes. The defendant was found guilty before the district justice of violating then section 950 of the Penal Code of June 24, 1939, 19 P.S. §4950, which prohibited the killing of any homing pigeon. On appeal, the defendant raised the constitutionality of the statute under which he was convicted as being a violation of Article 1, Section 1 of the constitution. Relying on *Gilbert, Braun* and *Riggles,* the court concluded "defendant was justified in killing the pigeon because it was the only way available to defendant to protect his property from further contamination." *McGowan, supra* at 402. The court further stated:

"We are deciding [this case] solely on the proposition that if section 950 of the Penal Code of 1939 was intended to deprive an owner of property of the right to

shoot a pigeon which is resting on his property and contaminating his water supply, that section is unconstitutional." *Id.*

Significantly, we note that no reference appears in the *McGowan* opinion that the then applicable law exempted from criminal sanction one killing a homing pigeon because of the need to protect property from which he was maintaining a livelihood. We note this, given the Commonwealth's argument that the legislature, in providing an exception authorizing destruction of game by a commercial farmer for protection of property, has not forbidden but, rather, reasonably restricted the killing of game and wildlife. See Commonwealth's brief, p. 5. Does not the exemption, contrary to the Commonwealth's contention, still forbid a noncommercial landowner from defending his property?

In *Commonwealth v. Bloom,* 21 D.&C.2d 139 (Clearfield Cty. 1959), the constitutionality of section 724 of the Game Law, 34 P.S. §1311.724, was again before the court of common pleas. There, the defendant was convicted for unlawfully killing a female deer in closed season. The defendant acknowledged the killing and, in fact, notified the game warden of the killing after shooting the deer that was damaging his lawn and plantings. The court concluded that "the application of section 724 of the Game Law would be unconstitutional . . . ." *Bloom, supra* at 142. Accordingly, the defendant's guilty conviction was stricken.

In examining the decisions that we have cited above, the *Bloom* court stated:

"In the decisions on this particular section [section 724], . . . it has been held that the owner or occupier of any premises may kill a wild animal on the property tend-

ing to or destroying that property, irrespective of whether or not the owner of the property is 'cultivating, as a means of gaining a livelihood, any lands for general farm crop purposes, commercial trucking, or fruit orchard or nursery being regularly maintained for commercial purposes.'

"All of the cases cited the evidence before the justice of peace, or alderman, disclosed the fact that the deer, except in *Commonwealth v. Braun, supra,* which was a bear, were on the premises of defendants and accomplished some destruction on the property owned or occupied by defendant.

"This section 724 of the Game Law, as above referred to, was held in all of the three cases cited to be unconstitutional and in violation of Article 1, Section 1, of the Constitution of Pennsylvania, if the exemption from liability for killing a deer or bear, as the case might be, as in *Commonwealth v. Braun, supra,* were to be confined strictly to such persons as might be engaged in farming for a livelihood or operating a nursery or orchard . . . . Such interpretation of section 724 of the Game Law would deprive the owner or occupier of such property 'the right to protect his life, home and property.' " *Bloom, supra* at 141. (citations omitted)

*Bloom* is of significance as clearly presenting a factual situation where the killer of the deer was not engaged in cultivation of his lands for a livelihood.

In *Commonwealth v. Stitler,* 22 D.&C.2d 240 (Clearfield Cty. 1960), the defendant was arrested and found guilty before the district justice of killing three deer in violation of the Game Law, 34 P.S. §1311.724. The defendant appealed on the ground that section 724 was an unreasonable and constitutional limitation on the right of a property owner to protect his property and, hence, a

violation of Article 1, Section 1 of the Pennsylvania Constitution. The parties stipulated that crops growing on a farm of the defendant were damaged by deer; that the defendant killed three deer and notified the authorities of the killing; that the killing occurred with a .22 caliber rifle; and that the only issue before the court was the constitutionality of sub-paragraph 2 of section 724, which provided that a killing could only occur through the use of a firearm discharging a single ball or bullet not smaller than a .25 caliber. Subsection (1) of section 724 authorized the killing of wild animals or game when destroying cultivated crops provided that the person killing the game actually resided upon the ground and depended upon the crops for livelihood. The Commonwealth argued that the right to protect one's property was not destroyed by subsection 2 as it merely regulated the conduct. The court in holding subsection 2 of section 724 unconstitutional stated: "such regulations must be reasonable and not burdensome. It is just as burdensome to compel a farmer or householder to keep and possess a .25 caliber firearm in order to protect his property outside of hunting season as it is to compel every property owner to be able to dress out a deer and transport its carcass to a place of safe keeping until the game warden can arrive to accept the carcass. . . .

"Further limitation on that right [allowance of killing where livelihood is not at issue] to a .22 caliber firearm is an unreasonable and burdensome restriction, and does curtail the constitutional right, and one inherent under the American concept of government, to possess and protect one's property, as well as his life." *Id.* at 246-47.

*Stitler* involved a factual scenario where the killing itself was lawful in that the defendant farmed for a live-

lihood. We cite *Stitler* merely for the purpose of illustrating what has been determined as an unreasonable and burdensome regulation on one's constitutional right to protect his property. Instantly, the guise of regulation is not a noncommercial landowner's request to protect his property being destroyed.

The most recent common pleas court opinion discussing the issue is *Commonwealth v. Grove,* 43 D.&C.2d 428 (Huntingdon Cty. 1967). Again, the question was whether a deer had been unlawfully taken or killed. The defendant owned a farm and cultivated as a means of gaining a livelihood. At the time of the killing, the deer was destroying defendant's cultivated crops. What appears to have been at issue in *Grove* was whether the deer was killed for a purpose other than to protect cultivated crops from material destruction and the constitutionality of section 724 as purporting to deprive a farmer of the right to protect his cultivated crops unless his lands are open to public hunting. Judge Himes gave ample consideration to the cases we have discussed and succinctly discussed constitutional limitations on the exercise of police power as follows:

"Insofar as the Act of Assembly, set forth in 34 P.S. §1311.724, purports to deprive a farmer of the right to protect his cultivated crops unless his 'lands are open to public hunting,' it violates Article I, Section 1 of the Constitution of Pennsylvania. Under and by force of the constitution, the owner of land has an inherent and indefeasible right to destroy deer when reasonably necessary to protect cultivated crops, which are his property. . . .

"This court rejects the Commonwealth's contention that the police power supports such legislation. Undoubtedly, the rights of individuals are subject to reasonable

regulation by the legislature, under the police power, but police power has its limitations. The police power cannot be used indiscriminately as a wedge to emasculate a constitutional provision. . . .

"The Pennsylvania Constitution was construed by the late Judge Gillan, in the case of *Commonwealth v. Carbaugh,* 45 Pa. C.C. 65 (1917). In that case, a female deer, while tramping down and eating wheat on the farm of defendant, was shot and killed by defendant. As in this case, defendant admitted the intentional killing, and the Commonwealth admitted that the deer was engaged in injuring defendant's crops at the time of the killing. The Act of Assembly of April 21, 1915, P.L. 146, §5, in force at that time, provided, among other things, as follows: 'and it shall be unlawful for any person at any time to shoot or wound or kill . . . a female deer . . . found in a wild state in this Commonwealth.'

"The question squarely before the court was whether, under the constitution, the owner of property has an inherent and indefeasible right to destroy deer found in the actual destruction of his property. The court there stated:

"If the legislature had the constitutional power to enact this part of the bill and if they meant by that to prevent the killing of wild deer while engaged in the destruction of property, then this defendant is guilty.

"The court further stated:

"We hold that when a wild deer is caught in the destruction of property, the owner of that property has an inherent and indefeasible right to destroy the deer." *Grove, supra* at 430-33.

We have found no Pennsylvania cases dealing with this subject matter since *Grove.* It stands true today, as at the time of *Grove,* that "[i]n every reported decision on

this subject in Pennsylvania, it has been held that the owner of real estate has an indefeasible right to destroy game engaged in the actual destruction of his crops, and that legislation which undertakes to deprive him of that right contravenes the constitution." *Id.* at 432. Moreover, the reported cases hold this irrespective of whether or not the owner of property is cultivating as means of gaining a livelihood. See *Bloom, supra.*

The Commonwealth cites *Commonwealth v. Haugh,* 12 D.&C. 795 (Centre Cty. 1929) as authority contrary to the principles set forth in the aforementioned cases. The *Haugh* case is distinguishable from the above cases. In *Haugh,* the question for consideration was not the killing of deer by the owner of the land alleged to have been damaged by the animal but the failure to report such killing. At issue in *Haugh* was the section of the Game Law providing a penalty for failure to report the killing of a deer. The court held that imposing a penalty for failure to report the killing of a deer was a reasonable exercise of the police power and did not violate the constitutional rights of citizens to protect their property. *Haugh,* like the above cited cases, recognized that "the owner of real estate has an indefeasible right to destroy deer when necessary to protect his crop" and that "any legislation which undertakes to deprive him of that right contravenes the constitution." See *Riggles* at 194-95 distinguishing *Haugh.*

While no Pennsylvania appellate court has been called upon to interpret sections 2307(a) or 2121 of the code, the appellate courts of other jurisdictions have been called upon to interpret statutes similar to ours in the face of constitutional challenges proclaiming that property owners have an inalienable, constitutional right to defend

against game and wildlife, even to the point of killing them, when reasonably necessary to protect their property. We will now undertake to examine the opinions of other jurisdictions as a guide to our resolution of the issue before us.

## VI. CASE LAW OUTSIDE PENNSYLVANIA

In *State of Washington v. Burk,* 114 Wash. 370, 195 P. 16 (1921), the Supreme Court of Washington had before it the case of a defendant charged with unlawfully killing an elk. The defendant was convicted of violating a statute which, in substance, provided that no person shall hunt, catch, take, kill or have in his possession any elk or part thereof. The defendant admitted killing the elk. He sought to justify the killing on the ground that the elk were, at time of the killing, in the act of damaging and destroying his crops. The prosecution argued that based on the statute the defendant cannot be heard to justify the killing on the ground the elk were causing damage to his property, and secondly, even were the defendant able to justify his act, the evidence was insufficient to show justification.

As stated by the court, the argument of the state was to the effect that one may not justify himself in the killing of an elk, in violation of express provisions of the statute, simply because the elk at the time of the killing may be damaging or even threatening to destroy property. *Id.* It was argued in *Burk* that when the legislature enacted the statute for the protection of elk it must have realized that they might trespass upon the lands of private individuals and do material damage to crops or domestic animals but determined that the preservation of

elk was of such importance to the people of the state that the private individual should bear his loss for the good of the public. *Id.* The Washington Supreme Court noted, "[t]his argument is more plausible, than sound." *Id.* The court recognized that the purpose of the statute was the protection of game from destruction and that the statute required reasonable construction to accomplish the purpose in view. The court construed the statute as not having as its intention to make unlawful, under all circumstances, the right of one to protect his property against the acts of animals by killing them. The court stated:

"Viewing the statute in this light, it may be justly said that one who kills an elk in defense of himself or his property, if such killing was reasonably necessary for such purpose, is not guilty of violating the law. If such statutes be given the construction contended for by the state, they would probably be unconstitutional, as violating statutory and constitutional provisions authorizing one to protect himself and his property." *Id.*

The *Burk* court went on to hold, "that the appellant in this case had a constitutional right to show, if he could, that it was reasonably necessary for him to kill these elk for the protection of his property." *Id.*

We also find the following language of the Supreme Court of Washington persuasive.

"If, in this case, the appellant had undertaken to defend on the ground that he killed the elk for the protection of his life, or that of some member of his family, then, unquestionably, such defense [justification] would have been available. But the constitutional right is to defend not only one's life but one's property. The difference in the justification in killing a protected elk in defense of one's life and killing one in defense of one's

property is only in degree. Undoubtedly, a stronger showing would have to be made by one undertaking to justify his violation of the law in defense of his property than he would be required to make in defense of his life." *Id.*

We learn from the Supreme Court of Washington in *Burk* that a construction of the statute allowing one to interpose a justification defense saves what would otherwise have been an unconstitutional enactment in precluding the defense of one's property.

Next, we look to the Court of Appeals of Alabama. There, in *Cotton v. State,* 31 Ala. App. 339, 17 So.2d 590 (1944), the defendant was tried and convicted of the offense of "killing a deer out of season" in violation of Code 1940, title 8, section 90 of the Alabama statutes. The defendant admitted to killing the deer at a time that it was engaged in the act of destroying crops. The state argued that justification was not authorized under the statute at issue. The Alabama court stated:

"Legal justification may always be interposed as a defense by a person charged with killing a wild animal contrary to law. Hence the killing of game protected by the statute or regulations is not prevented by them when reasonably necessary for the protection of person or property. However, the injury to property by wild animals must be of considerable extent to warrant killing out of season or contrary to law; a mere trespass is insufficient. Before one can resort to force in protecting his property from wild animals, he must have exhausted all other remedies provided by law, the use of such force must be reasonably necessary and suitable to protect his property, and he must use only such force and means as a reasonably prudent man would use under like circumstances." *Id.*

In allowing justification as a defense notwithstanding that the statute did not specifically authorize justification, the Alabama appeals court referenced a remark by its Supreme Court in *Thompson v. State,* 67 Ala. 106, 42 Am.Rep. 101: "The general principle is not denied that a person may lawfully kill an animal when necessary for the preservation of his property, as when one shoots a dog accustomed to injure sheep, and found at the time in the act of killing one."

The Alabama court also provides guidance as to the nature of the justification defense by referring to the opinion of the Montana Supreme Court in *State v. Rathbone,* 110 Mont. 225, 100 P.2d 86:

"There the Supreme Court of Montana laid down the rules which we borrow and adopt, that before the defendant can resort to force in protecting his property from wild animals, (1) he must have exhausted all other remedies provided by law; (2) the use of such force must be reasonably necessary and suitable to protect his property; and (3) he must use only such force and means as a reasonably prudent man would use under like circumstances." *Cotton, supra.*

Most recently, the Court of Appeals of Ohio, Ninth Appellate District reviewed the conviction of a defendant charged with attempting to catch or kill a non-game bird in *Ohio v. Troyer,* 1997 Ohio App. Lexis 5207 (November 19, 1997). The defendant resided on a farm engaged in raising for-profit exotic and domestic birds. He experienced problems with the great horned owl, a predatory bird, which had preyed upon and killed his birds. To thwart the attacks, the defendant placed pull traps and was cited by the Ohio Division of Wildlife for attempting to catch or kill a non-game bird in violation of the

Ohio Revised Code §1533.07. The Ohio code provided, in part, as follows:

"No person shall catch, kill, injure, pursue, or have in his possession . . . any bird other than a game bird . . .

"Hawks or owls causing damage to domestic animals or fowl may be killed by the owner of the domestic animal or fowl *while such damage is occurring.*" (emphasis added)

The Ohio court was called upon to determine whether the above section violated the defendant's constitutional right to protect his property. The constitutional provision at issue was Section 1, Article 1, of the Ohio Constitution which, like Article 1, Section 1 of the Pennsylvania Constitution specified certain "inalienable rights" including that of "acquiring, possessing and protecting property." Specifically at issue was the constitutionality of the statute making lawful such killings only *"while such damage is occurring."*

After commenting on both the recognized police power of the legislature to conserve wildlife and the strong presumption of constitutionality of a statute, the Ohio court focused on its duty to reasonably construe the statute in harmony with the constitution so as to save it from a constitutional infirmity. The court stated:

"Where the owner of domestic animals or fowl reasonably believes that danger to such property by an owl is reasonably imminent, or where past destruction makes it reasonably necessary to use force to prevent future damage, we find that such situations must fall under the purview of the language 'while such damage is occurring.' In those circumstances, the right of property owners to protect their property must be respected. See *Aldrich, supra* at ___, 16 Am. Rep. at 346; *Burk, supra*

at 377, 195 P. at 18-19; *Gilbert, supra* at 446; *Rathbone, supra* at ___, 100 P.2d at 95; *Masden, supra* at ___, 175 S.W.2d at ___. A review of the authorities cited . . . indicates that 'reasonable necessity' is a standard of consensus and we adopt it here. [citations omitted] Therefore, while we do not find R.C. 1533.07 unconstitutional, to the extent that it was narrowly applied to Troyer in the lower court, we sustain his second assignment of error. . . ." *Troyer, supra.*

Having broadly construed the statute to permit the killing of owls where reasonably necessary to prevent future damage based upon past destruction, the Ohio court saved the statute from constitutional attack. The constitutionality of the Ohio statute, hence, was dependent upon a liberal construction of the language of the statute to harmonize it with the constitution.

In reflecting upon the Pennsylvania common pleas court decisions which we have earlier referenced, we note that before declaring the statute involved unconstitutional, none of our state courts undertook the task of attempting to construe the statute in harmony with the constitution—a process we deem necessary before proclaiming a legislative enactment unconstitutional.

We further point out that the *Troyer* court found error in the trial court's instructing the jury that the statute did not allow an owl to be killed "in the anticipation or expectation" of damage. Because the case was remanded for a new trial consistent with the appellate court opinion, the higher court provided guidance to the lower court on remand, as follows:

"We note on remand that the fact that the defendant has caught or killed an owl, or the fact that he has attempted to do so, does constitute prima facie evidence

that R.C.P. 1533.07 has been violated. The burden must then shift to the defendant to demonstrate reasonable necessity. See *People v. Buffalo Fish Co.* (1900), 164 N.I. 93, 99, 58 N.E. 34, 36. It is a question for the jury to answer whether the catching or killing was reasonably necessary under the circumstances of each case. *Aldrich, supra* at ___, 16 Am.Rep. at 371; *Burk, supra* at 379, 195 P. at 19; *Rathbone, supra* at ___, 100 P.2d at 92. Again, each case must be decided on its own facts. The Montana Supreme Court in *Rathbone, supra* at ___, 100 P.2d at 93, set forth a three-part test to determine whether a defendant's actions were reasonably necessary under the circumstances. This test has been adopted by the Wyoming Supreme Court, *Cross, supra* at 378, and an Alabama appellate court, *Cotton, supra* at 400, 17 So.2d at 591. We believe the test strikes an appropriate balance between an individual's constitutional right to protect and the state's police power to regulate for the protection of wildlife, and we reiterate and adopt that test here with some clarifications.

"Reasonable necessity requires a defendant to:

"(1) Exhaust all other remedies provided by the law, provided such remedies are reasonably available and reasonably effective in protecting the defendant's property, (2) Use only such quantity, quality, and timing of force as is necessary to protect the property and (3) Use only such force and means that a reasonably prudent person would use under the circumstances, weighing both the consequences of using it and not using it in light of the severity of the damage sought to be avoided. With regard to this last factor, 'The injury and damage must be of considerable extent, not just fanciful or trivial.' See *State v. Mohler* (1932), 44 Ohio App. 52, 55, 184 N.E.

298. We would also add that in order to appropriately evaluate factors two and three, the jury must be allowed to consider recent, past depredations as evidence of reasonable necessity where such experiences may cause a justified apprehension of imminent of future damage." *Troyer, supra.*

The Ohio appellate court provided a construction to the statute so as to save it from constitutional attack by recognizing the defense of "reasonable necessity" or justification to be viewed on a case-by-case basis.

The Ohio court concluded: "although R.C. 1533.07 properly prevents owls from being killed needlessly, carelessly, or for sport, it cannot compel an individual to helplessly suffer his property, particularly his livelihood, to be eaten up night after night. Such would nullify the clear guarantee of Ohio's constitution. For this reason, we find that the statute must be interpreted broadly, allowing a property owner to use such force as is reasonably necessary, when reasonably necessary, to protect property from marauding owls." *Troyer, supra.*

In *State v. Ward,* 170 Iowa 185, 152 N.W. 501 (1917), a state statute made it unlawful for any person to kill any deer, elk or goat. The defendant, a farmer, had in his neighborhood a band of deer which had been in the habit of eating and trampling upon his grain. While the farmer had on previous occasions driven the deer away, he on one occasion shot and killed one of the deer. The farmer was arrested and charged with violating the statute and convicted in the lower court. The Supreme Court of the State of Iowa posed the question as follows:

"The one question in the case is whether a person who kills a deer, elk, or goat is necessarily guilty of violating the statute regardless of the reasons for such killing. To

put it another way: Is it open to the defendant to justify an admitted killing by showing a reasonable necessity in defense of personal property?"

The court then went on to state:

"By way of analogy, we note that the plea of reasonable self-defense may always be interposed in justification of the killing of a human being. We see no fair reason for holding that the same plea may not be interposed in justification of the killing of goat or a deer. *The right of defense of person and property is a constitutional right . . . and is recognized in the construction of all statutes.* If in this case it was reasonably necessary for the defendant to kill the deer in question in order to prevent substantial injury to his property, such fact, we have no doubt, would afford justification." (emphasis added)

Similar decisions of other states include the Massachusetts Supreme Court in *Commonwealth v. Higgins,* 277 Mass. 191, 194, 178 N.E. 536, 538 (1931) (stating that persons have a right to protect their property by every reasonable means); the Montana Supreme Court in *Rathbone, supra* (stating that if the statute which prevented the killing of elk out of season was construed to preclude killing an elk when necessary to defend property, the statute was unconstitutional); the Kentucky Court of Appeals in *Commonwealth v. Masden,* 295 Ky. 861, 175 S.W.2d 1004 (1943) (stating "it is generally recognized that one has the constitutional right to defend his property against imminent and threatened injury by a protected animal even to the extent of killing the animal"); and the Wyoming Supreme Court in *Cross v. State,* 370 P.2d 371 (1962) (quoting *Masden, supra* with approval).

## VII. DISCUSSION

With this research and background, we proceed to the case before us. First, we find a striking dissimilarity between that found unconstitutional in our sister common pleas court decisions and that which the defendant argues unconstitutional in this litigation. Here, the defendant argues that section 2307(a), the statute upon which Commonwealth relies to sustain its charges, is unconstitutional both as applied and on its face. See defendant's omnibus motion, paragraph 5. In the earlier opinions of our state courts, the predecessor statute to section 2307(a), section 1311.701 of the Game Law making it unlawful to kill game except during open season, was not attacked as unconstitutional. Rather, these decisions found unconstitutional those provisions of the former Game Law which made it lawful only for a person cultivating as a means of livelihood to kill game damaging their crops. Specifically, what was at issue in each case was 34 P.S. §1311.724 of the Game Law, now codified in the code at 34 Pa.C.S. §2121, not 34 P.S. §1311.701, now codified in the code at 34 Pa.C.S. §2307. This may, however, be a distinction without a difference.

The question for us to determine is similar to that before the *Troyer* court. The question can be posed as follows:

"Whether the exemption allowed for the lawful killing of game by section 2121 of the code adequately honors the defendant's constitutional right to protect his property, or whether it unconstitutionally abridges that right?"

Interpreting the law as the Commonwealth suggests, the defendant could not legally kill a deer or elk damaging his crops (or more generally property) unless he was

cultivating, as a primary means of gaining a livelihood, his lands. The defendant argues that the interpretation sought by the Commonwealth abrogates the fundamental and inalienable right that every land or property owner has to defend his property and, as such, renders the statute unconstitutional. It cannot be disputed that the interpretation advanced by the Commonwealth comes in conflict with Article 1, Section 1 of the state constitution, which unequivocally grants every person the inherent right "of acquiring, possessing and protecting property. . . ."

In recognition of this conflict, the Commonwealth argues twofold: (1) that sections 2307 and 2121 of the code are valid exercises of police power to regulate and preserve game and (2) that Article 1, Section 27 of our Pennsylvania Constitution overrides the inherent right to defend property.

## Exercise of Police Power

The deer and elk are the property of the Commonwealth. We do not question that in the exercise of its police powers the Commonwealth, through our legislature, has the sole right to preserve, protect and regulate the method, time and manner of hunting and killing game. This is exactly the purpose of section 2307(a) of the code which, simply stated, makes it unlawful to kill game contrary to the provisions of the code. On its face, section 2307(a) is not unconstitutional as its purpose is to regulate and preserve game, which is a valid exercise of police power. Legislation, however, is also subject to the rule that in application it must not expressly or impliedly abridge one's constitutional rights. If, in application, the

right to protect one's property has been abridged, the legislation then, as applied, is unconstitutional. "However broad the scope of the police power, it is always subject to the rule that the legislature may not exercise any power that is expressly or impliedly forbidden by the state constitution." *Gilbert, supra* at 444, citing *Vrooman, supra.*

To the extent that section 2121 of the code is read to only allow a person cultivating his land for a livelihood to destroy game, as the Commonwealth contends, we would have to conclude that application of sections 2307(a) and 2121 of the code are unconstitutional. We believe, however, that by giving reasonable construction to the statute, it can be interpreted in harmony with the constitution. We have a duty to liberally construe a statute in order to save it from constitutional infirmity. A construction allowing a defense of justification to be interposed affords one their constitutional protection, and such a construction appears to be in line with that advanced by the appellate courts of our sister states who have confronted similar issues.

We do not believe that it was the intention of our legislature when it limited the lawful killing of game or wildlife to persons cultivating their land as a primary means of gaining a livelihood to strip all other property owners of their inherent right to protect their property. Rather, it is reasonable to construe section 2121 of the code as allowing a person cultivating as a primary means of gaining a livelihood an exemption from the criminal sanction imposed by section 2307(a) upon establishment of those facts alone. Any person not cultivating as a primary means of gaining a livelihood may prevail only on evidence establishing "reasonable necessity" or "justifi-

cation" in the killing. By reading the statute in this manner, which we do not find unreasonable, we have preserved both the constitutionality of the law and one's constitutional right to defend his property by a killing where justified. All of the cases we have reviewed required "reasonable necessity" in the killing. As such, each case must be decided on its own facts. We have earlier cited what other courts have adopted as essential to establishing "reasonable necessity." Given the posture of the case as it is now before us, we need not adopt these standards, nor need we delineate what factors would or would not constitute "reasonable necessity" or "justification" in the killing.

Therefore, we find the provisions of the code to be a valid exercise of police power and not unconstitutional to the extent that the provisions are applied so as not to deny any property owner the right to offer the defense of justification in the protection of his property. This interpretation allows for an appropriate balance between an individual's constitutional right to protect property and the state's police power to regulate for the protection of wildlife.

### Article 1, Section 27 of the Pennsylvania Constitution

By the Commonwealth's argument and its brief, we perceive its primary position to be that sections 2307(a) and 2121 of the code are saved from unconstitutionality by reason of Article 1, Section 27 of the Pennsylvania Constitution. If there exists a conflict between Article 1, Section 27 and Article 1, Section 1 of the constitution, the Commonwealth argues that the protected public rights

under Article 1, Section 27 prevail over the inherent mankind rights of Article 1, Section 1. In the first instance, we question application of Article 1, Section 27 to the case sub judice and secondly, accepting its application and use of a balancing test, we conclude that the inherent mankind rights of Article 1, Section 1 prevail over Article 1, Section 27.

We question the Commonwealth's reliance upon Article 1, Section 27 for two reasons:

(1) The code, 34 Pa.C.S. §103, vests ownership of game and wildlife in the commission as an independent agency of the Commonwealth; whereas, Article 1, Section 27 speaks of those "public natural resources" being the common property of all the people with the Commonwealth as trustee. Has it, thus, been legislatively determined that game and wildlife are owned by the Commonwealth and are not the "public natural resources" contemplated as the common property of all the people in Article 1, Section 27?

(2) The "Wild Resource Conservation Act," 32 P.S. §5301 et seq., excludes from the definition of "wild resource" fauna not commonly pursued, killed or consumed for sport or profit, while at the same time providing that the purpose of the Act is to enhance the constitutional rights guaranteed in Article 1, Section 27 of the Pennsylvania Constitution. See 32 P.S. §§5302(1), 5303. Presently, deer are pursued for sport while elk are not.

We mention the above only as a means of expressing our underlying concern in the application of Article 1, Section 27 sub judice but, as the defendant has not seriously contested its application, we will proceed to address the claim of conflict between the constitutional provisions.

First, having determined that the statute is constitutional if applied in such a manner as not to restrict one's right to interpose a justification in defense of property, we find no conflict in the constitutional provisions. Article 1, Section 27 directs that the Commonwealth, as trustee of the natural resources, shall conserve and maintain them for the benefit of the public. By the code and its regulations, the Commonwealth has exercised its duty to conserve and maintain. Nothing in Article 1, Section 27 suggests that laws or regulations promulgated so as to "conserve or maintain" can unreasonably infringe on one's inherent and indefeasible rights granted by Article 1, Section 1. To take away a right to defend where justification exists would be an unreasonable infringement on an inherent right.

Secondly, even were a conflict found to exist, we cannot accept the argument that the responsibility placed on the Commonwealth by Article 1, Section 27 to safeguard public natural resources is intended to otherwise supersede man's inherent rights granted by Article 1, Section 1. To the extent that a conflict is deemed to exist, the rights of Article 1, Section 1 must prevail, subject only to reasonable regulations in the preservation of the public rights of Article 1, Section 27.

## VIII. CONCLUSION

We summarize as follows:

(1) 34 Pa.C.S. §2307(a) is a proper exercise of police power in the preservation of the needless killing of game or wildlife, including elk and deer.

(2) An owner of property has an inherent and indefeasible right to defend his property under Article 1, Section 1 of the Pennsylvania Constitution.

(3) Any legislation which undertakes to deprive one of his constitutional right to protect his property contravenes the Pennsylvania Constitution.

(4) The law gives a presumption of constitutionality to the acts of the legislature and requires a court to interpret a statute so as to preserve its constitutionality if the same can be done in harmony with the constitution.

(5) 34 Pa.C.S. §§2307(a) and 2121 if applied in such a manner as to require a property owner to forfeit his right to defend his property are unconstitutional.

(6) 34 Pa.C.S. §§2307(a) and 2121 can be interpreted in harmony with the constitution by allowing a justification defense.

(7) 34 Pa.C.S. §2121 can be interpreted so as to grant a landowner cultivating as a primary means of livelihood a defense to application of 34 Pa.C.S. §2307(a) on establishment of those facts alone; whereas, those not engaged in cultivating as a primary means of livelihood would be required to establish a defense of protection of their property based upon justification.

(8) The justification defense must arise out of reasonable necessity to be determined under the circumstances of the individual case.

(9) Article 1, Section 27 of the Pennsylvania Constitution, to the extent it may have application to the case sub judice, does not conflict with Article 1, Section 1; however, to the extent that a conflict may be deemed to exist, the inherent, indefeasible rights of mankind under Article 1, Section 1 prevail.

Based on the foregoing, we enter the following:

## ORDER

And now, January 3, 2000, upon consideration of defendant's omnibus motion, after argument held thereon and review of legal briefs, and consistent with the accompanying memorandum opinion, it is ordered and decreed that the omnibus motion is denied and this matter shall proceed to trial with the defendant permitted to defend on the basis of justification of his actions in defense of his property.