## Commonwealth v. Gilbert.

*Game laws—Deer destroying property—Constitutional law—Article i, section 1, Pennsylvania Constitution conflicts with sections 705 and 720, Act of May 24, 1923—Fencing lands.*

1. Where the employee of the owner of orchard lands, on the instructions of his employer, kills a doe deer in his employer's orchard, and danger to the crop is imminent, the employee is acting within his constitutional rights.

2. The provisions of the Act of May 24, 1923, §§ 705 and 720, P. L. 359, providing that doe deer may be killed only when they are in the act of destroying the property of the land owner, are contrary to article i, section 1, of the Constitution of Pennsylvania, which provides that "All men . . . have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property."

3. Where the danger to the property of the land owner is imminent, this section of the Constitution applies, and legislation which makes the acts of any person acting within this article illegal is unconstitutional and void.

4. A fruit farmer is not required to fence his lands against deer.

Appeal by defendant from summary conviction. Q. S. Franklin Co., Feb. T., 1924, No. 1.

*Edmund C. Wingerd,* for Commonwealth.

*Walter K. Sharpe* and *John McD. Sharpe,* for defendant.

GILLAN, P. J., April 22, 1924.—The defendant was charged, tried and convicted before a justice of the peace with having on Dec. 1, 1923, shot and killed a doe deer. An appeal was taken to this court. It was here tried without a jury and the testimony taken has been filed with the record. Any irregularity in the record of the justice of the peace or in the allowance of the appeal is waived. The material facts are not in dispute. The defendant

was in the employ of D. M. Wertz, who owned and cultivated large apple orchards. At the time of the shooting the defendant was at work in what is known as the Mont Alto Orchard, containing about 135 acres. This orchard has over 5000 apple trees, most of them in bearing condition. D. M. Wertz was the owner of said orchard and was cultivating it. The defendant, when he shot and killed the deer in the orchard, was acting under the instruction and direction of D. M. Wertz, the owner. The deer was not, at the time he shot her, actually engaged in doing damage.

The conviction before the magistrate was under the provisions of the Act of May 24, 1923, P. L. 359. The defendant's contention is that the portion of the act under which he was convicted is in contravention of the Constitution of the State of Pennsylvania. In the Declaration of Rights, which, of course, is part of the Constitution, it is provided: "Article I.—Section 1. All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property."

D. M. Wertz was at the time of the shooting and had been for some years prior thereto, the owner and cultivator of large tracts of orchard land along the South Mountain. He has over 500 acres, which is divided into three orchards. He has much the same trouble in one other of his orchards as he has in this one where this deer was shot. The deer come to his fields by day and by night; they do great damage; they destroy the buds on the bearing trees and totally destroy the young trees, eating the tops so that the trees die. They girdle the trees, which kills them. Each year young trees have been planted in place of those destroyed, and the young trees which are planted bear the same fate as their predecessors.

On the morning of the day this particular deer was killed there were several herds of deer in this orchard. They were eating among the trees. They apparently had been in the orchard all night. Much damage had been done through all the months of November and the months preceding. This same thing had gone on for years. Much of the damage done is done by deer at night. It is very difficult when deer are in the orchards in herds to get near enough to see whether or not they are actually engaged in eating the fruit spurs. It is more difficult to see which particular deer of the herd is doing damage. This defendant at the time he shot the deer was apprehensive, and naturally so, that the deer was bent on mischief, and therefore, he shot and killed it, the only way he could certainly protect the crop.

The Act of May 24, 1923, P. L. 359, makes it unlawful to kill a female deer except as is provided in said act in section 511. None of the provisions of that section is applicable here. The purpose of the act is not declared by its title. The title is "An act concerning game and other wild birds and wild animals, and revising, consolidating and changing the law relating thereto." There is no difficulty, however, in gathering the purpose and intent of the act from the act itself. It is, in so far as it relates to the portion of it necessary for the consideration of this case, to protect and preserve the deer of this Commonwealth. The deer are the property of the Commonwealth. The police power under which the legislature has the right to pass legislation for their preservation is limited by the Constitution. "However broad the scope of the police power, it is always subject to the rule that the legislature may not exercise any power that is expressly or impliedly forbidden by the State Constitution:" 12 Corpus Juris, 929; Com. v. Vrooman, 164 Pa. 306. Speaking of the police power, it is said: "Public good must be the object. In order

Commonwealth v. Gilbert.

that a statute or ordinance may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offence or manifest evil or the preservation of the public health, safety, morals or general welfare, that there is some clear, real and substantial connection between the assumed purpose of the enactment and the actual provisions thereof, and that the latter do in some plain appreciable and appropriate manner tend toward the accomplishment of the object for which the power is exercised. The mere restriction of liberty or of property rights cannot of itself be denominated 'public welfare' and treated as a legitimate object of the police power. The legislature may not, under the guise of the police power, impose on property burdens so excessive as to work confiscation thereof:" 12 Corpus Juris, 929. By the Act of June 3, 1878, § 33, P. L. 160, 165, it was provided that "nothing in this act shall prevent any person from killing any wild animal or bird when destroying grain, fruit or other vegetables in his or her premises." This provision was omitted from the Act of April 21, 1915, P. L. 146, which was the act under consideration in the case of Com. v. Carbaugh, 45 Pa. C. C. Reps. 65. It was there argued by counsel that it was unnecessary, for the legislative provision above referred to, because the Constitution made such a provision unnecessary.

The question still remains: Does the statute provide that a man shall not enjoy the right guaranteed to him by the Constitution of "acquiring, possessing and protecting property?" This question we regard as of very great importance. It is especially very important to the people of this county and the adjoining County of Adams. A portion of this county has become a great fruit-growing district. Fruit here has become a valuable article of commerce. Great tracts of land that were practically untillable have been cleared and planted in fruit trees. Very large sums have been spent in providing these and they have yielded very abundantly and have been a source of very ample return to the owners. A large number of wild deer have been for years living in this mountain. They not only damage the fruit but the vegetables and the gardens and the crops in the fields as well. They have rendered it almost impossible to have a vegetable garden. They have driven fruit farmers from their farms and, if allowed to continue their maraudings, these farmers, who have made large investments and who year after year spend much time and labor in caring for the fruit trees, will be compelled to abandon them; and there will be, instead of blossoms and ripe fruit found in abundance, thistles, thorns and briars. Why should all this be allowed? Aside from the beauty of the deer as they are seen roaming about the mountain, they must necessarily be preserved for food and the entertainment of the sportsman. It is recognized by every one who knows anything of the subject that the value of the deer for food is very insignficant. Must, then, the orchardist and the farmer and laborer who owns and cultivates his own garden be deprived of their property in order to preserve the game that the lover of sport may for a few days, or weeks at most, each year enjoy the sport of deer hunting? Must they endure this without any hope of compensation? If a cow goes astray from its owner and wanders into the neighbor's property and does damage, the person damaged has recourse to the owner of the cow for compensation. If swine enter upon one's land and root out his potatoes or damage his corn, the owner of the swine. is responsible for the damage, and this whether the land be fenced or not. If marauding men and night prowlers were to enter the orchard and commit the same depredations that the deer commit, the State of Pennsylvania would reach out its strong arm and compel

Commonwealth v. Gilbert.

payment of damages and punish them as well. But when wild deer commit depredations, the injured person is compelled to sit by and bear his loss in silence. If a citizen of the State must sit by and see the fruits of his labor destroyed by wild deer owned by the State, then is the guarantee of the Constitution, which reads, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property," a farce.

It was said by the court in Com. v. Carbaugh, 45 Pa. C. C. Reps. 65, a citizen has no right to destroy a female deer because of past destruction of property; he has no right to destroy a female deer because he apprehends that she may destroy property in the future. This was not necessary in order to reach a determination of the case.

We now hold that the owner of real estate has an indefeasible right to destroy a deer when necessary to protect his crop. Any legislation which undertakes to deprive him of that right contravenes the Constitution. We have been pointed to no deliverance of an appellate court in Pennsylvania which holds otherwise. We do not overlook the fact that a statute will be declared unconstitutional only when it violates the Constitution in such a manner as to leave no doubt or hesitation in our minds: Sharpless v. Philadelphia, 21 Pa. 147; Com. v. Snyder, 279 Pa. 234. The killing of the deer was because of past depredations and the well-founded apprehension of what would happen in the future, and the defendant was justified in killing. The killing by the defendant is the same as would have been the killing by Wertz, on whose land it was found and under whose instructions and directions the defendant acted.

It is argued that under the authority of numerous decisions of this State, the legislature, acting under the police power, did not go beyond the limits of the Constitution in the act we are considering. An examination of the cases that have been passed upon will show that the questions under consideration have been the preservation of the food supply, the protection, comfort and well-being of the people and other matters which tend to the betterment of the human family, the protection of the health, and so forth; but nowhere has it been held or even hinted at that the State shall destroy property of the citizen, without redress or compensation, for the purpose of preserving the wild animal that works destruction. The same question has been passed upon by the highest courts for other states, notably State v. Ward, 170 Iowa, 185; Aldrich v. Wright, 53 N. H. 398; State of Washington v. Burk, 114 Wash. 370. According to these authorities, one may kill a wild animal even though contrary to the laws of the state, if such animal is destroying the property or the owner has a reasonable apprehension that the property will be destroyed. Opposed to this is the case of Barrett v. State of New York, 220 N. Y. 423. This was a civil action and was cited by Judge Bridges in State v. Burke, above cited. He said "The language used was appropriate in a civil action but not in a criminal case."

It is argued that the defendant's employer might have fenced his lands. Fencing is a very doubtful protection. Whether or not it would do any good depends on the contour of the land. It would be very expensive and would be imposing a burden upon this land owner, not imposed on other land owners under like circumstances. The Act of June 2, 1923, P. L. 489, provided that under certain circumstances, the Commonwealth would bear half the expense of fencing lands against deer. They appropriated for two years the sum of $10,000 for that purpose. The amount of fence which could be built with that

amount of money would afford very limited protection, if any, and the whole $10,000 appropriated by the State of Pennsylvania might be used up in fencing the lands of this owner alone, without regard to any others. Why should a fruit farmer be required to fence his lands? The fencing of agricultural lands has not been required in this State since the Act of April 4, 1889, P. L. 27, and to impose such an act upon the fruit farmer would be an unjust discrimination and one that the law would not sanction.

We find as a fact that the killing by this defendant was reasonably necessary for the protection and preservation of the crops of his employer, and that the Act of 1923, above cited, in so far as it undertakes to make it unlawful to kill deer under those circumstances, is in contravention of the Constitution of the State.

The defendant has submitted requests for findings of fact. We think that we have answered all those requests in our general opinion. He has also submitted requests for conclusions of law, and we think we have covered that as well.

Therefore, now, April 22, 1924, we find the defendant, Paul Gilbert, not guilty, and that the county shall pay the costs.

From King Alexander, Chambersburg, Pa.