115 P.3d 399 (2005)
STATE of Washington, Respondent,
v.
Jerrie L. VANDER HOUWEN, Petitioner.
No. 22609-3-III.
Court of Appeals of Washington, Division Three, Panel Five.
July 12, 2005.
*401 Russell J. Mazzola, Attorney at Law, Yakima, WA, for Appellant.
Kenneth L. Ramm, Deputy Prosecuting Attorney, Yakima, WA, for Respondent.
BROWN, J.
¶ 1 In this discretionary review of Jerrie L. Vander Houwen, Sr.'s two convictions for second degree unlawful hunting of big game, we conclude the necessity jury instruction was proper, the verdicts were not inconsistent, and the evidence was sufficient. Accordingly, we affirm.

FACTS
¶ 2 The facts are agreed except where noted. Mr. Vander Houwen farms in Yakima County including some 37 acres of new cherry trees. From 1998 into 2000, elk came through the Washington State Department of Fish and Wildlife's fences onto Mr. Vander Houwen's property causing significant damage. Mr. Vander Houwen attempted to repair the fences and to feed hay to the elk, but was unsuccessful in minimizing the damage. Mr. Vander Houwen alleged he complained to the Department on four occasions during the 1999-2000 winters about the elk damage.
¶ 3 In January 2000, Mr. Vander Houwen began shooting over the elks' heads to drive them from his orchard. On January 12, he again complained to the Department. He told one of the Department's officers there was about 40 elk in his orchard over the last couple days and shooting over their heads was not working. The officer told Mr. Vander Houwen the Department could not respond for about a week due to an upcoming holiday. Mr. Vander Houwen told the officer he could not wait that long, so he would have to start lowering his sights and shooting directly at the elk. He alleges (and the State disputes) the officer told him if he shot the elk he must let them lie.
¶ 4 A Department officer drove by his orchard on January 18 or 19 and saw dead elk, but did not stop. On January 27, 2000, the Department received another report of dead elk near Mr. Vander Houwen's orchard. Two responding officers found 10 dead elk, some in and some out of Mr. Vander Houwen's orchard. Using a metal detector, the officers located two slugs in two of the elk from a .270 caliber rifle.
¶ 5 Mr. Vander Houwen admitted shooting at the elk and owning a .270 caliber rifle. Mr. Vander Houwen was charged with 10 counts of second degree unlawful hunting of big game and 10 counts of first degree waste of wildlife. No evidence was presented by the State relating a specific count to a specific elk. Mr. Vander Houwen presented the affirmative defense of necessity at trial, but the district court declined to give his constitutional right instruction based on State v. Burk, 114 Wash. 370, 195 P. 16 (1921). Instead, the trial court gave a necessity instruction based upon WPIC 18.02.
¶ 6 The jury found Mr. Vander Houwen guilty solely of two counts of second degree unlawful hunting of big game. The superior court affirmed. We granted discretionary review.

ANALYSIS

A. Necessity Defense Jury Instructions
¶ 7 The issue is whether the trial court erred in rejecting Mr. Vander Houwen's proposed jury Instructions (No. 1 and No. 7), and instead giving the jury 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.02 (WPIC), the necessity defense instruction (Instruction No. 15).
¶ 8 RALJ 9.1(a) provides, "The superior court shall review the decision of the court of limited jurisdiction to determine whether that court has committed any errors of law." RALJ 9.1(b) provides, "The superior court shall accept those factual determinations supported by substantial evidence in the record (1) which were expressly made by the court of limited jurisdiction, or (2) that may reasonably be inferred from the judgment of the court of limited jurisdiction." We follow RALJ 9.1 as well. Spokane County v. Bates, 96 Wash.App. 893, 896, 982 P.2d 642 (1999).
¶ 9 Proposed Jury Instruction No. 1 states: "One who kills elk in defense of his or her property is not guilty of violating the law if such killing was reasonably necessary for *402 such purpose." Clerk's Papers (CP) at 181. Proposed Jury Instruction No. 7 states: "One who kills elk in defense of his or her property is not guilty of violating the law if such killing was reasonably necessary for the defense of his or her property." CP at 236. Instead of giving either of these instructions, the court gave another instruction proposed by Mr. Vander Houwen (No. 8), Jury Instruction No. 15 based on 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.02, at 63 (2d ed. Supp.1998) (WPIC):
Necessity is a defense to a charge of unlawful big game hunting in the second degree and/or waste of wildlife in the first degree if
(1) the defendant reasonably believed the commission of the crime was necessary to avoid or minimize a harm; and
(2) the harm sought to be avoided was greater than the harm resulting from a violation of the law;
(3) the threatened harm was not brought about by the defendant; and
(4) no reasonable legal alternative existed.
This defense must be established by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty.
CP at 223.
¶ 10 We review a trial court's refusal to give a proposed jury instruction for an abuse of discretion. State v. Picard, 90 Wash.App. 890, 902, 954 P.2d 336 (1998). We review de novo alleged errors of law in jury instructions. Del Rosario v. Del Rosario, 152 Wash.2d 375, 382, 97 P.3d 11 (2004). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. Id.
¶ 11 First, Mr. Vander Houwen contends he has an absolute constitutional right to kill the elk. Proposed Jury Instructions No. 1 and No. 7 are derived from State v. Burk, 114 Wash. 370, 195 P. 16 (1921). There, our Supreme Court recognized a necessity defense under facts similar to ours: "[i]t may be justly said that one who kills an elk in defense of himself or his property, if such killing was reasonably necessary for such purpose, is not guilty of violating the law." Burk, 114 Wash. at 376, 195 P. 16 (emphasis added); See e.g., State v. Bailey, 77 Wash.App. 732, 740, 893 P.2d 681 (1995) (necessity defense recognized in wildlife cases under limited circumstances where wildlife was killed to protect property).
¶ 12 Mr. Vander Houwen mistakenly argues, under Burk, he was constitutionally permitted to kill in defense of his property in an absolute sense. We disagree. The Burk holding allows a necessity defense. Therefore, the trial court had a tenable basis to reject Mr. Vander Houwen's proposed absolute defense instructions. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 13 Second, Mr. Vander Houwen contends the trial court improperly shifted the burden of proof in its necessity instruction. However, Instruction No. 15 conforms to Mr. Vander Houwen's alternative Proposed Jury Instruction No. 8 found in Clerk's Papers at 237. We are precluded from reviewing jury instructions when the defendant invites it. State v. Bradley, 141 Wash.2d 731, 736, 10 P.3d 358 (2000).
¶ 14 Moreover, Instruction No. 15 did not improperly shift the burden of proof because it did not relieve the State of its burden to prove each crime element beyond a reasonable doubt. State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995). Here, the "to convict" jury instruction for unlawful hunting of big game put the burden on the State to prove beyond a reasonable doubt each element of the charged crime.
¶ 15 Washington uses a two-tiered test to evaluate whether the State or a defendant has the ultimate burden of proof for an affirmative defense. "First, the court must determine whether the defense is an element of the crime or whether the defense negates an element of the crime. . . . Second, if there is no due process requirement, the court *403 must determine whether the Legislature intended, nevertheless, to place the ultimate burden of persuasion on the State to prove the absence of the defense beyond a reasonable doubt." State v. Lively, 130 Wash.2d 1, 10-11, 921 P.2d 1035 (1996) (citing State v. McCullum, 98 Wash.2d 484, 656 P.2d 1064 (1983)).
¶ 16 First, in applying the test, the necessity defense does not negate an element of an offense as does a consent defense in a rape case. Instead, a necessity defense attempts to justify, excuse, or explain otherwise proscribed end conduct in a way making that conduct lawful by exception. For example, Instruction No. 6, the "to convict" instruction for the Unlawful Hunting charge required the State to prove Mr. Vander Houwen hunted elk without the necessary documentation or disregarded specified rules governing elk hunting (the end conduct). Unlike a rape prosecution, where the State retains the ultimate burden of disproving lack of consent beyond a reasonable doubt, the State has no ultimate burden of disproving defense of property.
¶ 17 Second, in common law, necessity is an affirmative defense. See State v. Niemczyk, 31 Wash.App. 803, 807, 644 P.2d 759 (1982) ("Necessity is an affirmative defense and should not be considered by the jury unless the defendant has submitted substantial evidence to support it."). Normally, affirmative defenses must be proved by the defendant by a preponderance of the evidence. State v. Riker, 123 Wash.2d 351, 366, 869 P.2d 43 (1994). The necessity instruction is consistent with these principles.
¶ 18 Accordingly, we conclude the court did not err in giving Instruction No. 15.

B. Unanimity Instruction
¶ 19 Although the State separately charged Mr. Vander Houwen with 10 counts, he briefly argues he was entitled to a unanimity instruction because the State alleged he committed 10 different sets of illegal acts. However, this argument lacks a specific assignment of error as required under RAP 10.3(a)(3). An appellate court will not consider the merits of an issue if the appellant fails to raise the issue in the assignments of error section of the appellant's brief in violation of RAP 10.3(a)(3). State v. Olson, 126 Wash.2d 315, 321, 893 P.2d 629 (1995). And, the issue was not argued below.

C. Evidence Sufficiency and Consistency of Verdicts
¶ 20 The issue is whether the guilty verdicts are supported by sufficient evidence, and if so, whether they are consistent with the not guilty verdicts in the other unlawful hunting counts and all not guilty verdicts in the waste of wildlife counts.
¶ 21 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. Circumstantial evidence and direct evidence are equally reliable. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). We "defer to the trier of fact on issues involving conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence." State v. Hernandez, 85 Wash.App. 672, 675, 935 P.2d 623 (1997).
¶ 22 The law proscribes second degree unlawful hunting of big game when one:
(a) Hunts for, takes, or possesses big game and the person does not have and possess all licenses, tags, or permits required under this title;
(b) Violates any rule of the commission or director regarding seasons, bag or possession limits, closed areas including game reserves, closed times, or any other rule governing the hunting, taking, or possession of big game; or
(c) Possesses big game taken during a closed season for that big game or taken from a closed area for that big game.
RCW 77.15.410(1).
¶ 23 Here, the State alleged conduct (a) and (b). The agreed facts show several dead elk were found on Mr. Vander Houwen's *404 property and he admitted shooting at the elk. Additionally, two slugs from a .270 caliber rifle were found in two of the elk. Mr. Vander Houwen admitted owning a .270 caliber rifle. Based on the above, sufficient evidence exists to support Mr. Vander Houwen's two convictions for second degree unlawful hunting of big game. Moreover, in raising the necessity defense Mr. Vander Houwen admits the proscribed end conduct.
¶ 24 We defer to the trier of fact on issues involving the persuasiveness of the evidence. Hernandez, 85 Wash.App. at 675, 935 P.2d 623. Regarding consistency, the jury could find the two slugs found in two elk solely supported two guilty verdicts. Seemingly inconsistent verdicts can be upheld "[w]here the jury's verdict is supported by sufficient evidence from which it could rationally find the defendant guilty beyond a reasonable doubt." State v. Ng, 110 Wash.2d 32, 48, 750 P.2d 632 (1988).
¶ 25 Affirmed.
I CONCUR: KURTZ, J.
SCHULTHEIS, J. (concurring).
¶ 26 At the outset, I acknowledge the statutory scheme enacted by the legislature to address damage caused by wildlife. Chapter 77.36 RCW. At trial, Jerrie Vander Houwen proffered two jury instructions regarding statutory defenses based on this legislation. The trial court refused to give one of the instructions, but allowed the other. His RALJ appeal before the superior court embraced statutory defense issues, and he continued to argue them before our commissioner in his motion for discretionary review. The order granting discretionary review did not expressly limit the issues upon which review was granted. See RAP 2.3(e). However, Mr. Vander Houwen did not raise statutory defense issues or even mention the statutory scheme in his briefing once discretionary review was granted. Issues to which no error is assigned and that are not briefed or supported by citation to the record or authority, are generally waived. In re Det. of A.S., 138 Wash.2d 898, 922 n. 10, 982 P.2d 1156 (1999); see RAP 10.3(a)(3), (5). Mr. Vander Houwen waived the statutory defense issues.
¶ 27 As to the issues addressed, analytically, I agree generally with the majority's assessment of the law, but I am sympathetic to Mr. Vander Houwen's predicament. In a similar case, a Pennsylvania judge ultimately held that "the owner of real estate has an indefeasible right to destroy a deer when necessary to protect his crop. Any legislation which undertakes to deprive him of that right contravenes the Constitution." Commonwealth v. Gilbert, 5 Pa. D. & C. 443, 446 (1924). In so doing, the judge explained his or her reasoning and the inequity in holding otherwise:
A portion of this county has become a great fruit-growing district. Fruit here has become a valuable article of commerce. Great tracts of land that were practically untillable have been cleared and planted in fruit trees. Very large sums have been spent in providing these and they have yielded very abundantly and have been a source of very ample return to the owners. A large number of wild deer have been for years living in this mountain. They not only damage the fruit but the vegetables and the gardens and the crops in the fields as well. They have rendered it almost impossible to have a vegetable garden. They have driven fruit farmers from their farms and, if allowed to continue their maraudings, these farmers, who have made large investments and who year after year spend much time and labor in caring for the fruit trees, will be compelled to abandon them; and there will be, instead of blossoms and ripe fruit found in abundance, thistles, thorns and briars. Why should all this be allowed? Aside from the beauty of the deer as they are seen roaming about the mountain, they must necessarily be preserved for food and the entertainment of the sportsman. It is recognized by every one who knows anything of the subject that the value of the deer for food is very insignificant. Must, then, the orchardist and the farmer and laborer who owns and cultivates his own garden be deprived of their property in order to preserve the game that the lover of sport may for a few days, or weeks at most, each year enjoy the sport of deer hunting? Must they endure this without *405 any hope of compensation? If a cow goes astray from its owner and wanders into the neighbor's property and does damage, the person damaged has recourse to the owner of the cow for compensation. If swine enter upon one's land and root out his potatoes or damage his corn, the owner of the swine is responsible for the damage, and this whether the land be fenced or not. If marauding men and night prowlers were to enter the orchard and commit the same depredations that the deer commit, the State of Pennsylvania would reach out its strong arm and compel payment of damages and punish them as well. But when wild deer commit depredations, the injured person is compelled to sit by and bear his loss in silence. If a citizen of the State must sit by and see the fruits of his labor destroyed by wild deer owned by the State, then is the guarantee of the Constitution, which reads, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property," a farce.
Id. at 445-46.
¶ 28 Unlike orchardists in Pennsylvania, those in Washington are not meant to be completely without redress for damage done by wild game. RCW 77.36.040 allows an orchardist to make a claim to the State for losses due to damage caused by its game. But those damages are limited. Claims are limited to $10,000 each and embrace only the value of the crop. RCW 77.36.040(1). The statute excludes claims for "lost profits, consequential damages, or any other damages whatsoever." RCW 77.36.040(1). Mr. Vander Houwen claims he has suffered economic damages of more than $236,000 over the past two years due to elk migration into his orchard. Because the damages were to his trees and not to the crop, the statute does not appear to benefit him.
¶ 29 I agree with the judge in Gilbert, but I am constrained to concur with the majority.